ELSIE HOGLE v. CITY OF MINNEAPOLIS AND ANOTHER.
HENRY MENTH, APPELLANT.[1]

January 25, 1935.

No. 30,009.

*Cobb, Hoke, Benson, Krause & Faegre,* for appellant.
*Leonard, Street & Deinard,* for respondent.

HILTON, JUSTICE.

Action for damages for death by wrongful act. The action was dismissed during the trial as to defendant city of Minneapolis.

[1]Reported in 258 N. W. 721.

Plaintiff had a verdict for $6,500 against defendant Menth. He appeals from an order denying his motion for judgment notwithstanding the verdict or a new trial.

Appellant concedes that the evidence made the question of his negligence one of fact for the jury's determination, and that because decedent's contributory negligence was not assigned as a ground in his motions below he is not entitled to judgment notwithstanding, but urges that contributory negligence appeared as a matter of law and for that reason a new trial should be granted on the ground of insufficiency of the evidence to support the verdict. He also assigns as error the court's interpretation of the traffic statutes to the jury.

Plaintiff's intestate (Kenneth Hogle) was killed in a collision between a truck driven by him and a police patrol car driven by Menth. The accident happened about four p. m. on September 27, 1931, at the right-angle intersection of Fifteenth avenue south and Fifth street in Minneapolis. The police patrol car was being used as an ambulance (either designation is used hereinafter) responding to an emergency call from the General Hospital to the scene of a serious accident at Twentieth avenue south and Thirty-fifth street. Decedent was driving northward on the east side of Fifteenth avenue; the patrol car was going eastward on Fifth street. Fifteenth avenue was an arterial highway, on the west side of which at its intersection with Fifth street there was a "stop" sign facing traffic approaching from the west. The collision took place in the northeast corner of the intersection. There was a two-story cooperage shop at the southwest corner of the intersection, making it a blind corner. Appellant was familiar with the location and knew that Fifteenth avenue was an arterial highway, with stop signs on each side governing traffic on Fifth street. He admitted that between Sixth avenue and Fifteenth avenue he was going at 40 to 45 miles an hour and went into the intersection at a speed of at least 35 miles an hour. There was testimony justifying a finding that he was going much faster. He stated that as he entered the intersection he saw decedent's truck ten feet south of it but "kept on going." Other witnesses stated that the truck was in the inter-

section first. The jury by its verdict having found that to be the fact, the decedent had the right of way over ordinary vehicles approaching on Fifth street. He was not required to yield that right of way to an ambulance or police patrol car unless an "audible signal" was given. 1 Mason Minn. St. 1927, §§ 2720-19(b), 2720-20(a).

The evidence as to whether the siren on the police patrol car was sounded was in conflict. On the face of the record it would seem that the negative answer had far the stronger support in the evidence. Five witnesses testified that it was not sounded; other witnesses said it was. One witness testified that appellant, when at the house where decedent's body lay before burial, admitted that he did not sound the siren; another testified that he admitted that the siren was not sounded; both said that appellant also stated that "if we had used our heads as well as Kenneth did his, this would not have happened." Appellant testified that the siren was sounded constantly, but that he did not do it. He did not remember whether it was sounded by Dr. Woutat or police officer McIntosh, who were both on the front seat with him. McIntosh said the doctor did; the doctor said that either he or McIntosh did. In a sworn statement made after the accident Dr. Woutat stated that the appellant sounded the siren. However, there was a fact question for the jury's determination and abundant evidence to support its finding that the siren was not sounded. There was nothing in the evidence indicating that the decedent knew or should have known of the approach of the patrol car.

Appellant contends, however, that the physical facts, evidenced by photographic exhibits disclosing the damage done to the respective motor vehicles, conclusively established that decedent drove his truck into the ambulance, and for that reason was guilty of contributory negligence as a matter of law. We have carefully examined all the evidence, including the exhibits. Considering the condition of the two cars (damage done to each and the portions thereof wrecked) and their relative locations after the collision, we cannot agree with appellant's contention. The evidence was sufficient to justify the jury in concluding that the patrol car ran

into decedent's truck and that the accident happened in the manner claimed by plaintiff. The evidence certainly was not such as conclusively to overcome the presumption that the decedent was exercising due care. Contributory negligence as a matter of law does not appear from the evidence as it did in the case of Williams v. Jungbauer, 191 Minn. 16, 252 N. W. 658, cited by appellant. The facts in that case are clearly distinguishable from those here. Contributory negligence is always a question of fact unless reasonable minds could reach but one conclusion. Guthrie v. Brown, 192 Minn. 434, 256 N. W. 898, and cases cited.

■ There remains for consideration the question as to whether the court erred in its charge. The error assigned is that the court by its instructions permitted a finding of negligence and liability for violation of the rules of the road pertaining to speed, right of way, etc. if the jury should find that the siren on the patrol car was not sounded. The court also charged that if the jury found that the siren was sounded and that the patrol car was on an emergency mission, then the speed and right of way statutes did not apply.

The court's instructions were given under an interpretation of certain provisions of the uniform highway traffic act (L. 1927, c. 412, 1 Mason Minn. St. 1927, §§ 2720-1 to 2720-69) to the effect that, unless the siren was sounded the movements of the patrol car upon public streets and highways were governed by traffic regulations the same as were ordinary vehicles. Appellant contends that a police patrol car used as an ambulance and being driven in response to an emergency call is exempt from the regulations applicable to ordinary vehicles even though it does not sound a warning of its approach. This contention is based upon L. 1927, c. 412, § 8(a) (1 Mason Minn. St. 1927, § 2720-8(a), which reads:

"The provisions of this act shall not apply to vehicles when operated with due regard for safety, under the direction of peace officers in the chase or apprehension of violators of the law or of persons charged with or suspected of any such violation, nor to fire departments or fire patrol vehicles when traveling in response to

a fire alarm, nor to public ambulances when traveling in emergencies. This exemption shall not however protect the driver of any such vehicle from the consequences of a reckless disregard of the safety of others."

Prior to the enactment of the uniform highway traffic act of 1927, police patrols, ambulances, and fire apparatus were not subject to the ordinary rules of the road. L. 1925, c. 416, § 1(b), provided:

" 'Motor Vehicles' includes all vehicles propelled by any other than muscular power, except traction engines, road rollers, fire apparatus, police patrol vehicles, ambulances, and such vehicles as run only upon rails or tracks."

See Hubert v. Granzow, 131 Minn. 361, 155 N. W. 204, Ann. Cas. 1917D, 563; Edberg v. Johnson, 149 Minn. 395, 184 N. W. 12; Behr v. Soth, 170 Minn. 278, 212 N. W. 461; Ring v. Minneapolis St. Ry. Co. 173 Minn. 265, 217 N. W. 130.

L. 1927, c. 412, § 1(b), defines "Motor Vehicles" as "Every vehicle, as herein defined, which is self-propelled." Section 31 of that chapter provides:

"The provisions of this act applicable to the drivers of vehicles upon the highways, shall apply to the drivers of all vehicles owned or operated by this state or any county, city, town, district or any other political subdivision of the state subject to such specific exceptions as are set forth in this act."

Under the above provisions, police patrol cars and ambulances come within the regulations of the act, unless otherwise excepted. L. 1927, c. 412, § 19(b), provides:

"The driver of a vehicle upon a highway shall yield the right of way to ambulances and to police and fire department vehicles when the drivers thereof sound an audible signal. This provision shall not operate to relieve the driver of an ambulance, or a police or fire department vehicle from the duty to drive with due regard for the safety of all persons using the highway."

Section 20(a) provides:

"Upon the approach of any ambulance or police or fire department vehicle giving audible signal by bell, siren, or exhaust whistle, the driver of every other vehicle shall immediately drive the same to a position as near as possible and parallel to the right hand edge or curb of the highway, clear of any intersection of highways, and shall stop and remain in such position unless otherwise directed by a police or traffic officer until the ambulance or police or fire department vehicles shall have passed."

The above last quoted provisions were not included in the statutory traffic regulations prior to 1927. We are in accord with the views of the trial court, expressed in its memorandum thus:

"Taking all these rules of the road into consideration, it would seem that the dominant note running all through with respect to ambulances traveling in emergencies, and fire apparatus and police patrol vehicles, is that a warning signal of their approach by them is required to exempt them from the observation of the provisions of the rules of the road. If the warning signal is given then they have the right of way and all others are required to clear the way and leave their progress unimpeded. But nevertheless, the driver of an ambulance traveling in an emergency is not relieved from the consequences of a reckless disregard of the safety of others or from the duty to drive with due regard for the safety of all persons using the highway. In the operation of an ambulance in an emergency, speed is essential, otherwise its mission might fail. At the same time it is the speed that creates the danger and the hazard to others on the highway. The greater the speed the greater is the danger and the hazard. Other persons on the highway, whether pedestrians or drivers of motor vehicles, may not appreciate or have knowledge of the approaching danger unless they have warning, and unless they have warning or knowledge of the approach of the ambulance they will be unable to clear the streets and the intersections. Therefore, it would seem that these changes in the rules of the road pertaining to ambulances, fire apparatus and

police patrol vehicles manifest an intention on the part of the legislature to subject the drivers of such vehicles to the responsibility of giving warning of their approach, and also require them to exercise due care for the rights of others lawfully upon the streets and highways.

"It would seem that the purpose and intent of all these statutory regulations contemplate that if a warning by siren, bell or whistle is given by an ambulance traveling in an emergency that the driver shall be entitled to certain exemptions from the operation of the provisions of the rules of the road, and that if he doesn't give the warning that he then disregards the statute and subjects himself to the responsibility of drivers of other ordinary motor vehicles operating upon the highways."

If a construction were to be given § 8(a) of the act as contended for by appellant, then a driver of a vehicle such as an ambulance, on an emergency mission could, without giving an audible signal, satisfy the requirements of the act, if he were otherwise operating the vehicle "with due regard for safety" and not with a "reckless disregard of the safety of others." Such a construction would practically nullify §§ 19(b) and 20(a). The three provisions, §§ 8(a), 19(b), and 20(a), should be construed together; that is, a driver of a vehicle such as here involved must not only comply with the requirements of § 8(a), just above referred to, but he must also give an audible signal. The requirement that such a signal be given is a reasonable one. Ambulances and police patrol cars are not so dissimilar in appearance from modern private automobiles, vans, and light trucks as to give adequate and timely warning of their speedy approach without the giving of some audible signal. The court's instructions were correct.

Affirmed.