# Richmond

CHARLES M. HATFIELD v. LYDIA V. THOMAS.

March 3, 1947.

Record No. 3161.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Rixey & Rixey*, for the plaintiff in error.

*C. Dodson Morrisette*, for the defendant in error.

HOLT, C. J., delivered the opinion of the court.

Under review is an automobile collision case, which scarcely approaches the dignity of an accident.

It occurred in the city of Norfolk at the intersection of Bank street and Brambleton avenue. Bank street runs north and south, and Brambleton avenue runs east and west, crossing each other at right angles.

The plaintiff, Lydia V. Thomas, sixty-one years old, was driving her car, a sedan, north on Bank street and was approaching the Brambleton avenue crossing. As she approached that avenue, the signal light on the southeast corner of these streets read "caution." There was another signal light to the same effect on the southwest corner. She

came to a full stop, stood until the light changed, when she was given the green light. As it came on, she started across Brambleton avenue, going slowly—6 or 7 miles an hour. When in the middle of that avenue, proceeding cautiously, her car was struck by the defendant's car, which hit it about its center.

Bank street is built up on both sides, as one approaches Brambleton avenue. There is a building on the southeast corner of these streets which obstructed the view of the plaintiff as she looked to the east on Brambleton avenue, and her view of the defendant's car was obstructed as it travelled west on it.

In the record is this stipulation of counsel:

"It is stipulated between counsel for the plaintiff and counsel for the defendant that the pole on which the traffic light is located, which pole is near the southeast corner of Bank street and Brambleton avenue, is located at a point on the east side of Bank street and to the south of Brambleton avenue at a point so that the center of the said pole is distant from the building line on the south side of Brambleton avenue a distance of 36 inches."

The brakes of the defendant's car were out of order and were practically worthless when the speed was over 15 miles an hour. One witness said that he was travelling at a terrific rate of speed, estimating it to be 60 miles an hour.

The ordinance of the city of Norfolk limited speed in this section of the city to 15 miles an hour.

This is defendant's account of his evidence given in police court when the case was first heard:

"Q. But you will not dispute saying 'I didn't see her car until the accident had occurred'?

"A. Until it was right in my face, and I couldn't do anything about it.

"Q. You don't dispute saying what I read? You don't dispute saying that?

"A. No, sir."

Moreover, he entered this intersection with signal lights against him.

The defendant's brother, James L. Hatfield, fifteen years old, had cut his foot on a broken beer bottle on the afternoon of August 30, 1945. It was bleeding freely; his sister had tried to stop this but without effect, and the defendant was taking this brother to the hospital for treatment.

As he drove west on Brambleton avenue, he was "blinking" his lights and blowing his horn, which is an ordinary horn that comes on Ford cars. Mrs. Thomas said that she did not see these blinking lights, and she could not have seen them for the intervening building to her right. She also said that she did not hear the defendant's horn.

Gilbert Harris, a colored letter carrier, was about the intersection of these streets at the time of the accident. He heard the horn and saw the blinking lights and estimated the speed of the car at 60 miles an hour. He was asked if this horn was blowing loud enough to be heard by any one in the vicinity and answered: "Yes, sir, provided they were on the outside. I would not say any one enclosed would." Mrs. Thomas rode in a sedan car, which may have been closed or may not have been.

Daniel Hopkins, another colored letter carrier, was near the point of the accident and testified to the same effect.

Counsel differ sharply as to the color of these witnesses. Certainly that is unimportant. Just why there should be any difference about this when it is a matter of record does not appear.

It is difficult to see how the defendant could have been more negligent. He drove at a speed which he knew was beyond the control of his defective brakes. He exceeded the speed limits of the city ordinance, and he paid no attention to traffic signals at the crossing. Moreover, he was by profession a taxi driver.

Objection is made to plaintiff's instruction 4 and 5. These exceptions are without merit. Indeed, the defendant in his petition for a writ of error said: "We do not claim that the circumstances of the emergency excused the defendant from the exercise of that degree of care required by the law." Since the defendant was required to obey the law, which

he as a taxi driver well knew, his failure was certainly not within the definitions of ordinary care.

The court refused instruction D and E offered by the defendant which suggested contributory negligence. Instruction D contains this statement:

"The court instructs the jury that if you believe from the evidence that as the plaintiff approached the intersection she came to a stop because of the amber or red light, and that the defendant's car was approaching the intersection with his horn blowing and lights blinking or burning under such circumstances as to warn a reasonably prudent person so situated as the plaintiff that the defendant was likely to crowd the light, then the plaintiff would not be justified in entering the intersection promptly upon the turn of the light to green in disregard of the defendant's approaching car; but it was the duty of the plaintiff to exercise reasonable care to avoid a collision with the defendant's car * * * ."

The plaintiff said that she did not hear the horn and that she did not see the blinking lights. A jury may have believed that she heard the horn, but she could not have seen the blinking lights from the place where she had come to a stop, until the car was right on her, for her view was obstructed by a building to her right.

Instruction E, rejected, told the jury that the plaintiff was required to exercise reasonable care.

Instruction 9, given by the court at its own instance, was all that the defendant could have asked for. It reads:

"The plaintiff was only required to exercise ordinary care in crossing Brambleton avenue, and, in determining whether or not she did so, she is bound with such knowledge as she had, or by the exercise or ordinary care should have had, respecting the operation of the defendant's automobile."

Moreover, the court had already given, for the defendant, instructions A, B, and C, which covered his case and, particularly, the plea of contributory negligence, with a direction to find for the defendant if the jury thought it had been established.

Indeed, the plaintiff was guilty of no contributory negli-

gence at all, and the court might well have refused any instructions which dealt with that subject.

The plaintiff did not see the blinking lights; her view was cut off by a building to her right, and if she heard the defendant's automobile horn, there was nothing to indicate to her that he would not stop for the intersection crossing signals. Certainly he had no such right unless it was given him by some city ordinance.

In *Healy & Roth* v. *Balmat*, 189 Ark. 442, 74 S. W. (2d) 242, the court said:

"Appellants say that the ambulance was on an errand of mercy. It is true it was an emergency call, and it was endeavoring to get an injured person to the hospital as quickly as possible. This, however, did not relieve it from the consequences of its negligence, if it were guilty of negligence. One cannot, even on an errand of mercy or in an effort to relieve an injured person and remove him to a hospital, block the traffic in such a manner as to endanger others, especially when in a few feet of the place the ambulance might have been parked without any interference with the traffic." See also a number of late cases to the same effect: *Reid* v. *Abbiati*, 113 Vt. 233, 32 A. (2d) 133; *Austin* v. *De George* (Tex. Civ. App.), 55 S. W. (2d) 585; *Roll Osborn & Sons* v. *Howatt* (La. App.), 167 So. 466; *Hogle* v. *Minneapolis*, 193 Minn. 326, 258 N. W. 721; and *Wichita Falls Traction Co.* v. *Jeter* (Tex. Civ. App.), 48 S. W. (2d) 372.

There is no evidence to show that the plaintiff did not exercise ordinary care, and there is no evidence to show that the defendant exercised any care at all.

It is said that the verdict is excessive. It was for $5,000. The plaintiff was over 60 years old; her collar bone was broken, her injuries were painful, and she was sent to the hospital. At the time of her testimony she was still in pain. Of course the amount of her recovery was for the jury.

Juries are made up of ordinary men, and the amount of her recovery may have been in some measure influenced by the

conduct of the defendant, for some taxi drivers do sometimes think that traffic regulations are made for other people.

As we have already said, the defendant can scarcely contend that plaintiff's injury was an accident. An accident has been defined as an unexpected happening. In the light of all that has been said, he might have expected anything to happen.

The judgment of the court below should be affirmed.

*Affirmed.*