CITY OF WORTHINGTON ET AL., APPELLEES, *v.* O'DEA, APPELLANT.

376

(No. 6740—Decided February 13, 1962.)

*Mr. R. Patrick West,* for appellees.
*Messrs. Dresbach, Crabbe, Newlon, Collopy & Bilger* and *Mr. Charles E. Brown,* for appellant.

DUFFEY, P. J. This is an appeal from an order of the Common Pleas Court affirming a judgment for plaintiffs, appellees herein, entered by the Municipal Court of Columbus. In stating the facts, all disputed matters are assumed to have been resolved in favor of plaintiffs. Accordingly, with the exception of a few uncontroverted matters, the evidence on the defendant's side of the case is not considered.

Defendant, O'Dea, was traveling west on Route 161. At the intersection of Routes 161 and 23 (High Street) in Worthington, there was a flasher signal. The signal was red for Route 161 and caution for Route 23. A Worthington police car was about two to three blocks north of the intersection and proceeding south on Route 23 in the center or east lane for southbound traffic. While disputed, it is assumed that the police car had a red flasher beacon operating at all times.

O'Dea stopped at the intersection and then proceeded to make a left turn into High Street at a slow rate of speed, completing his turn into the center or east lane for southbound traffic. The cruiser was traveling about 65 miles per hour. It slowed, with little or no braking, when the officer observed O'Dea's car. While on the whole record it is somewhat dubious, it is assumed that the police siren was first turned on at a point 200 feet north of the intersection. As O'Dea completed his turn, and the cruiser was approaching the intersection, the officer again accelerated, and as the cruiser reached the intersection it was traveling at about 60 to 65 miles per hour. O'Dea was then approximately 50 feet south on Route 23. Having

observed the cruiser, O'Dea began turning to his left and across the centerline into the northbound lane. At the same time the cruiser was swinging left as it passed through the intersection and entered the northbound lane. The cruiser's brakes, if applied at all, were used very lightly from the intersection to the point of impact. The impact occurred 75 feet south of the south curb of Route 161 and about 13 feet west of the east curb of Route 23. The cruiser struck the left rear of O'Dea's car, proceeding some 120 feet further, sideswiping a pole and ending up about 13 to 16 feet over the east curb.

The first assignment of error concerns the issue of whether the cruiser was engaged in an emergency run. In view of our findings indicated below, we express no opinion on the point.

The second assignment goes to the issue of O'Dea's negligence. Upon examination of the record, and without reviewing the relevant portions here, a finding of negligence by O'Dea cannot be declared unreasonable enough to reverse on the weight of the evidence.

In his third assignment, defendant challenges the court's finding that the cruiser was being operated with due care. See Sections 4511.24 and 4511.45, Revised Code.

The cruiser was responding to a report from another police vehicle of an "OMVI." There is nothing in the record to indicate that this alleged "OMVI" constituted an immediate danger to any person or property, or that the other police vehicle was in difficulty. Both Route 23 (High Street) and Route 161 (Granville Road) are major streets. The intersection is within the city of Worthington and immediately adjacent to the business section. As noted, there was a flashing caution signal for Route 23 traffic. See Section 4511.15, Revised Code. The record is not clear as to the posted speed limit. North of the intersection, it was apparently 35 miles per hour. South of the intersection, it was either 25 miles per hour or 35 miles per hour.

The law requires that an emergency vehicle have a siren which is audible at 500 feet. Section 4513.21, Revised Code. Under that section "the driver of the emergency vehicle shall sound such equipment when it is necessary to warn pedestrians and other drivers of the approach thereof." It is apparent, therefore, that the driver here was under an obligation to make reasonable use of this special equipment. It is uncontestable

that the furthermost point at which the siren was operated was 200 feet from the intersection. It was a cold winter night. Defendant's windows were, quite naturally, closed. At 60 miles per hour, an automobile travels 88 feet per second. At 65 miles per hour, it travels over 95 feet per second. Under the circumstances, we think it was apparent that there was not a reasonable use of the siren equipment.

With respect to speed, the cruiser was going 60 to 65 miles per hour in the city and through a major intersection. This was clearly excessive under the circumstances. Defendant's car was moving, at most, 10 to 15 miles per hour after completing the turn. As the cruiser entered the intersection going 60 to 65 miles per hour, it would be, at most, about 50 feet from defendant's auto. The cruiser did not make any appreciable attempt to use the brakes prior to the impact. At the speed stated and without substantial braking, it would take a mere second or less for the distance between the vehicles to close. Because of its speed, the vehicle was simply beyond reasonable control.

It is true that the officer testified that at impact his speed was 40 to 45 miles per hour. This statement is physically inconsistent with the other admissions by the officer. Mere engine drag, without substantial braking, would not decrease the speed of the car so substantially in the 75 feet from the intersection to the point of impact. In responding to a call of the type involved here, to travel at speeds of 60 to 65 miles per hour with inadequate use of the siren, and while passing through a major intersection with a caution signal, and while approaching another vehicle, is such unreasonable conduct that reasonable minds in considering it could not differ.

Considering the nature of the general area and of the intersection, the flashing caution signal, the usage of the siren, and the high speed at which the cruiser was traveling, we hold that, as a matter of law, the cruiser was not operated "with due regard for the safety of all persons and property upon the highway." Sections 4511.24 and 4511.45, Revised Code.

Accordingly, we hold that the driver of the police cruiser was contributorily negligent as a matter of law.

Plaintiffs have suggested that the record here is incomplete because some of the testimony given below was in rela-

tionship to a diagram which was not included in the bill of exceptions. The diagram was not evidence, nor was it offered or accepted as such. Therefore, there is no question of an incomplete bill of exceptions. The use of the diagram here did not render any material testimony incomprehensible. In most instances, previous or subsequent testimony makes the statements readily comprehensible, and in other instances it was clearly cumulative.

Judgment of the Common Pleas Court is reversed and that of the Municipal Court is vacated, and final judgment is granted to defendant.

*Judgment reversed.*

DUFFY and BRYANT, JJ., concur.