ADAM MARTINCO v. WILLIAM L. HASTINGS.
EUGENE GABRIELSON, THIRD-PARTY DEFENDANT.

122 N. W. (2d) 631.

June 7, 1963—No. 38,802.

*Mott, Grose & Von Holtum* and *Howard Ledin,* for appellant.

*Montague, Applequist, Lyons, Nolan, Donovan & Knetsch* and *Arnold W. Larson,* for respondent.

NELSON, JUSTICE.

Plaintiff, Adam Martinco, commenced this action against defendant,

William L. Hastings, to recover for personal injuries and property damage to his automobile sustained in a three-vehicle collision occurring between 9:30 and 10 a. m., September 6, 1960. Defendant answered, denying negligence on his part, and counterclaimed for damage to his automobile. He also filed a third-party complaint against Herbert Gabrielson, owner of the third vehicle involved in the collision, and Eugene H. Gabrielson, its driver, seeking recovery of property damage and indemnity or contribution if he should be found liable to plaintiff. Third-party defendant Eugene Gabrielson answered, denying negligence on his part.

After trial the jury returned a verdict in favor of defendant Hastings without awarding him damages on his counterclaim in the action brought by plaintiff and a verdict in favor of Gabrielson in the third-party action. Plaintiff thereupon moved for judgment notwithstanding the verdict and a new trial on the issue of damages only, or, in the alternative, for a new trial on all grounds. He appeals from the order denying that motion.

All vehicles involved in the collision were traveling north on U. S. Highway No. 61. The highway was dry and the day clear and sunny. The accident occurred in a 65-mile-per-hour zone, south of Pine City, Minnesota. Plaintiff, a deputy sheriff of Pine County, was driving an unmarked red Chevrolet automobile equipped with a siren, two flashing lights in the windshield, and one in the rear window. Defendant Hastings was driving a 1959 Ford, and third-party defendant Eugene H. Gabrielson, a 1952 Mercury automobile. Philip L. Schulze and his wife, Yvonne A. Schulze, eyewitnesses of the collision, were also driving north in Mr. Schulze's automobile. Plaintiff, observing a truck ahead of him crossing back and forth over the centerline of the highway, decided to investigate the apparent traffic violation and passed the Schulze auto without operating the flashing lights on his own vehicle, pulling in behind an old Chevrolet. He then flashed his lights, went around that vehicle, and pulled in directly behind the truck. He turned off his lights and followed the truck for a short distance. In the meantime, Eugene Gabrielson had passed defendant's Ford. The Gabrielson vehicle came up behind the line of traffic, which included the truck,

some 5 or 6 miles south of Pine City. Plaintiff's Chevrolet was then maintaining a speed of 55 to 60 miles per hour. Gabrielson followed in the line for 2 or 3 miles, made observations for passing, but noticed stones hitting his car, and did not attempt to pass at that time. When it appeared safe for him to pass, he accelerated to a speed of 60 to 65 miles per hour and moved into the passing lane. Defendant Hastings, who was behind Gabrielson, had also made observations preliminary to passing and pulled his Ford into the passing lane to the rear of the Gabrielson car, following behind it 150 to 175 feet at a speed of about 60 miles per hour. Plaintiff, deciding to stop the truck, then pulled out in front of Gabrielson into the passing lane. Gabrielson observed no directional signals given by plaintiff when he turned out in front of him. Gabrielson first noticed a blinking light on plaintiff's car when it moved into the passing lane. He at first assumed it was a directional signal, but did not notice "just where it was coming from."

After plaintiff came alongside the truck which he was attempting to stop, he slowed his car to between 40 and 50 miles per hour and continued slowing at a faster rate to about 20 miles per hour. Gabrielson was forced to apply his brakes hard. Hastings also had to apply his brakes, but in spite of his efforts he struck the Gabrielson car in the rear, pushing it into the rear of plaintiff's Chevrolet.

Neither of the other drivers heard a siren from plaintiff's automobile. Plaintiff testified that he "gave a spurt to the siren" while alongside the truck and waved the driver to move to the side of the road. He was beside the truck only for a short time and distance. He testified that he put on the flashing lights in his vehicle as he pulled into the passing lane, but admits he did not give any hand and arm or other directional signal. Defendant Hastings testified that he noticed the Gabrielson auto starting to slow down at about the time plaintiff's car cut in front of it over into the passing lane. He testified that he saw smoke rise from the rear tires of the Gabrielson car, so he applied his brakes hard and angled off toward the shoulder. He came into contact with the Gabrielson car while it was still moving. Plaintiff's Chevrolet came to rest 10 to 20 feet ahead of the Gabrielson vehicle, and the defendant's car stopped 10 or 12 feet behind it.

Plaintiff in his assignment of error claims that the court erred in instructing the jury regarding Minn. St. 169.19, subds. 4 to 6, and in submitting the issue of their violation as contributory negligence. He also contends the court erred in submitting to the jury the questions of defendant's negligence and plaintiff's contributory negligence.

■  Citing Markle v. Haase, 245 Minn. 520, 73 N. W. (2d) 362, plaintiff properly contends that the statutes dealing with the rights and duties of drivers of emergency vehicles in responding to emergency calls must be construed together.[1] He admits that these statutes do not expressly exempt such a vehicle from § 169.19, subds. 4 to 6, but contends that a driver of an emergency vehicle responding to an emergency is not bound by them. These subdivisions provide as follows:

"Subd. 4.    No person shall * * * turn a vehicle from a direct course or move right or left upon a highway unless and until the movement can be made with reasonable safety, and then only after * * * giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by the movement.

"Subd. 5.    A signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.

"Subd. 6. No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear unless there is a good and sufficient reason for not being able to do so."

The word "vehicle" is defined in § 169.01, subd. 2, as follows:

" 'Vehicle' means every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power or used exclusively upon stationary rails or tracks."

Defendant insists that the Highway Traffic Regulation Act ought to

---

[1] The provisions in the Highway Traffic Regulation Act, Minn. St. c. 169, dealing with emergency vehicles are as follows: § 169.01, subd. 5; § 169.03, pars. 1, 2, 3, and 4; § 169.17; § 169.20, subd. 5; § 169.59, subd. 4; § 169.64, subd. 3; and § 169.68, par. 2.

be strictly construed with respect to the exemptions granted authorized emergency vehicles, citing § 645.44, subd. 16, which defines the word "shall" as "mandatory," and § 645.19, which states:

"* * * Exceptions expressed in a law shall be construed to exclude all others."

Section 169.03, par. 1, reads as follows:

"The provisions of this chapter applicable to the drivers of vehicles upon the highways shall apply to the· drivers of all vehicles owned or operated by the United States, this state, or any county, city, town, district, or any other political subdivision of the state, subject to such specific exemptions as are set forth in this chapter with reference to authorized emergency vehicles."

It is our view that the word "shall" as used in § 169.03, par. 1, is mandatory unless another intention clearly appears. Under this construction the provisions of the Highway Traffic Regulation Act apply to the drivers of the vehicles described in § 169.03, par. 1, subject *only* to the specific exemptions set forth in that act with reference to authorized emergency vehicles.

We have said that when a statute speaks with clarity in limiting its application to specifically enumerated subjects, its application shall not be extended to other subjects by process of construction. Griswold v. County of Ramsey, 242 Minn. 529, 65 N. W. (2d) 647; City of St. Louis Park v. King, 246 Minn. 422, 75 N. W. (2d) 487; 17 Dunnell, Dig. (3 ed.) § 8980; 50 Am. Jur., Statutes, §§ 229, 244.

▄▄ In Markle v. Haase, *supra,* relied on by plaintiff, we said that §§ 169.03, 169.17, and 169.20 do not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of others and permit him to disregard the speed and right-of-way requirements when responding to an emergency call only if he sounds an audible signal by siren and proceeds cautiously through a stop sign or intersection. We further held that § 169.03 does not impose on an emergency vehicle driver an absolute duty to slow down when approaching an intersection, but rather to slow down as the circumstances require and to proceed with caution, concluding that the extent to which the circum-

stances as shown by the evidence in that case required defendant to reduce his speed was properly left to the jury. That case does not control here since §§ 169.17 and 169.20 specifically exempted the emergency vehicle driver there from compliance with speed and right-of-way requirements, but the Highway Traffic Regulation Act has no provision exempting the driver of such a vehicle from compliance with § 169.19, subds. 4 to 6. Those subdivisions apply to plaintiff whether or not he was driving an authorized emergency vehicle in response to an emergency at the time of the accident.

As we pointed out in Hogle v. City of Minneapolis, 193 Minn. 326, 258 N. W. 721, prior to the enactment of the Uniform Highway Traffic Regulation Act in Minnesota in 1927, police patrols, ambulances, and fire apparatus were not subject to the ordinary rules of the road. Since the enactment in 1927, it appears that it has been the legislative intent to exempt only authorized emergency vehicles from certain specific provisions of the act.

Plaintiff cites Edberg v. Johnson, 149 Minn. 395, 184 N. W. 12, as controlling in this case. The Edberg case held that a police motorcycle used by an officer in pursuit of a driver of an automobile who was exceeding the speed limit came within the exceptions made in the statute then in force for police patrol wagons. However, that case was decided in 1921, and after the enactment of the Highway Traffic Regulation Act in 1927 this court placed a different construction upon the statutory rules applicable to emergency vehicles.[2]

---

[2]In Hogle v. City of Minneapolis, 193 Minn. 326, 258 N. W. 721, a patrol car was being used as an ambulance in providing emergency service. A collision occurred between a truck driven by plaintiff's decedent and the patrol car driven by the appellant. Whether a siren on the patrol car was sounded as required by statute was held in that case to be a question for the jury, as was decedent's alleged contributory negligence. This court, after quoting applicable provisions which had been included in the act of 1927, approved the views of the trial court, as expressed in its memorandum (193 Minn. 332, 258 N. W. 723):

"It would seem that the purpose and intent of all these statutory regulations contemplate that if a warning by siren, bell or whistle is given by an ambulance traveling in an emergency that the driver shall be entitled to cer-

Since there are no specific exemptions granted to authorized emergency vehicles with respect to § 169.19, subds. 4 to 6, we think it clear that plaintiff was bound to comply with these provisions. If there is to be a change in the statute, it must come from the legislature, for the courts cannot supply that which the legislature purposely omits or inadvertently overlooks. State ex rel. Verbon v. County of St. Louis, 216 Minn. 140, 12 N. W. (2d) 193; Minneapolis-Honeywell Regulator Co. v. Nadasdy, 247 Minn. 159, 76 N. W. (2d) 670; Hartman v. Cold Spring Granite Co. 247 Minn. 515, 77 N. W. (2d) 651; 17 Dunnell, Dig. (3 ed.) § 8938.

In Cavey v. Bethlehem, 331 Pa. 556, 1 A. (2d) 653, the supreme court of that state held that the act of a policeman pursuing and clocking a speeding motorist was not such an official emergency duty as to come within the exemption provisions of the statute. We think it clear that under our highway traffic regulations a vehicle must qualify as an authorized emergency vehicle to give its driver the benefit of the specific exemptions granted such vehicles.

The record indicates that plaintiff, after passing cars ahead of him,

---

tain exemptions from the operation of the provisions of the rules of the road, and that if he doesn't give the warning that he then disregards the statute and subjects himself to the responsibility of drivers of other ordinary motor vehicles operating upon the highways."

Minn. St. 169.68, par. 2, requires that emergency vehicles shall be equipped with a specified type of siren and that "such siren shall not be used except when such vehicle is operated in response to an emergency call or in the immediate pursuit of an actual or suspected violator of the law, in which latter events the driver of such vehicle shall sound the siren when necessary to warn pedestrians and other drivers of the approach thereof."

It seems clear from the foregoing statutory provision, as well as §§ 169.17 and 169.20, subd. 5, that the driver of an authorized emergency vehicle, even if granted certain specific exemptions from the traffic regulations of c. 169, cannot disregard the ordinary rules of the road and can lose these specific exemptions by failure to give proper warning by use of a siren and thus become subject to the ordinary rules of the road. Hogle v. City of Minneapolis, *supra*; Jurgensen v. Schirmer Transp. Co. 242 Minn. 157, 64 N. W. (2d) 530; Mayor and Aldermen of Town of Morristown v. Inman, 47 Tenn. App. 685, 342 S. W. (2d) 71; City of Worthington v. O'Dea, 115 Ohio App. 375, 185 N. E. (2d) 323.

followed immediately behind the truck for about ¼ mile without flashing his lights or operating his siren. He was then traveling from 50 to 55 miles per hour. It appears that he assumed the truck was slowing down as it was nearing the village of Pine City. Even though he may have wanted to stop the truck, nothing in these circumstances indicated to drivers behind him that he was in immediate pursuit of an actual or suspected violator of the law.

Defendant Hastings also contends that while the general public can readily recognize a fire truck or a properly marked police vehicle, there was nothing to indicate that plaintiff's vehicle was different from other vehicles operating on the highway. He therefore contends that plaintiff's privately owned vehicle did not qualify as an emergency vehicle under § 169.01, subd. 5, and that he was, at the time immediately preceding the accident, using his car contrary to the provisions of § 169.98. We need not pass on those questions, however, since we have determined that plaintiff, whether or not the driver of an emergency vehicle responding to an emergency, was required to comply with § 169.19, subds. 4 to 6. We think it fair to say that the main fact issue involved here is whether plaintiff, under the circumstances, exceeded the bounds of due care and by so doing endangered life and property of others upon the highway.

Gabrielson, Philip Schulze, Yvonne Schulze, and Hastings testified that they did not hear a siren from plaintiff's Chevrolet. Plaintiff's testimony was that he touched the siren once—when his vehicle was beside the truck—and that it blared once. Defendant Hastings contends that had plaintiff sounded his siren prior to changing his course into the passing lane and while he was proceeding alongside the truck, and also while attempting to slow down and drop back behind the truck, it would have given Gabrielson and himself warning of plaintiff's attempted maneuver.

Warning by a siren to other vehicles proceeding in the lane of passing traffic was necessary under the circumstances. Plaintiff could not safely rely upon a small red light in the rear window of his vehicle as a proper and adequate warning signal to several vehicles approaching from the rear, especially since he was driving a red, unmarked vehicle and the flashing red light might well blend with the color of his car or be ob-

scured by the rays of the sun. Whether he used the siren or not was a question for the jury.

The charge of the trial court must be viewed in its entirety. If the instructions convey to the jury a clear and correct understanding of the law, that is all that is required. It is not necessary that every possible opportunity for misapprehension be guarded against. See, Lott v. Davidson, 261 Minn. 130, 139, 109 N. W. (2d) 336, 342.

In Lee v. Smith, 253 Minn. 401, 92 N. W. (2d) 117, it was contended on appeal that the trial court had read inapplicable statutes to the jury. This court held that what constitutes the applicable law depends to some extent upon what the jury finds the facts to be. The trial court is not the trier of facts before instructing the jury. The trial court is only required to decide what issues exist and then fully and adequately instruct the jury upon the issues. Templin v. Crestliner, Inc. 263 Minn. 149, 116 N. W. (2d) 178.

Reading of the provisions of § 169.19, subds. 4 to 6, was proper in order to present to the jury those fact issues involving the question whether the violation of those subdivisions, if found, constituted a proximate cause of the accident.

It has been suggested by plaintiff that the failure of the trial court to read § 169.03, par. 1, was prejudicial to him since it also makes reference to emergency vehicles. The record fails to disclose any request that this statute be given as part of the trial court's instructions, and no such suggestion appears to have been made at the close of the court's charge. Under the circumstances and viewing the charge in its entirety we fail to see where omitting the reading of that statute from the charge prejudiced any of the parties to the action.

In Kuether v. Locke, 261 Minn. 41, 51, 110 N. W. (2d) 539, 546, this court approved the following part of the trial court's charge:

"It is the duty of the driver of any motor vehicle to keep a lookout as to traffic conditions that affect him, whether to the front or the sides or the rear, * * *."

It was incumbent upon plaintiff here to make reasonable observation concerning traffic both to the front, sides, and rear of his vehicle before changing his course on the highway, whether to move into the passing

lane or to slow up for the purpose of dropping behind another vehicle. If plaintiff had looked to the rear he could have seen all approaching vehicles then in plain sight. Whether plaintiff complied, under all the circumstances, with the cautionary requirements of the Highway Traffic Regulation Act by the use of the flashing lights and siren with which his vehicle was equipped, and whether he kept a proper lookout, present fact questions for the jury. Proximate cause, like negligence and contributory negligence, is a fact issue for determination by the jury except when the facts are undisputed and are susceptible of only one inference. See, 13B Dunnell, Dig. (3 ed.) §§ 7011, 7048.

■ We have said that where reasonable men may differ as to what facts, essential to support negligence, have been established by the evidence the question then becomes one for the jury. Capriotti v. Beck, 264 Minn. 39, 117 N. W. (2d) 563. Certainly the facts of this case present a jury issue as to plaintiff's violation of § 169.19, subds. 4 to 6. It was for the jury, taking into account the fact that vehicles were behind him in the passing lane and in close proximity to his vehicle, to determine whether plaintiff's maneuvers upon the highway met reasonable safety requirements. See, Ryan v. Griffin, 241 Minn. 91, 94, 62 N. W. (2d) 504, 507.

There are no hard-and-fast rules as to just how close to a vehicle in the lead the operator of a following vehicle ought to drive in the exercise of ordinary care, nor as to what precautions he must take to avoid colliding with a leading vehicle which slows, stops, or swerves in front of him. Nor is there a general rule as to what signals the driver of a leading vehicle must give to warn those following him of his intentions to change his course, stop, or slow down. We have said that the driver of the leading vehicle must exercise ordinary care not to stop, slow up, or swerve from his course without adequate warning to following vehicles; that the driver of the following vehicle must exercise ordinary care to avoid collision with vehicles, both in front and behind him. In each case, except when reasonable minds may not differ, the degree of care required, and whether it was exercised, are questions for the jury. Nees v. Minneapolis St. Ry. Co. 218 Minn. 532, 16 N. W. (2d) 758; Gustafson v. Schilt, 263 Minn. 294, 116 N. W. (2d) 557.

■ Upon completion of the testimony plaintiff moved for a directed verdict against Hastings, claiming that the evidence established his negligence as a matter of law. This motion was denied by the trial court. Plaintiff contends here also that Hastings' negligence should not have been submitted to the jury.

As was said in Teas v. Minneapolis St. Ry. Co. 244 Minn. 427, 70 N. W. (2d) 358, it is only in the clearest of cases that the question of negligence becomes one of law. See, Kolatz v. Kelly, 244 Minn. 163, 69 N. W. (2d) 649; Erickson v. Strickler, 252 Minn. 351, 90 N. W. (2d) 232; 13B Dunnell, Dig. (3 ed.) § 7048. In this case it clearly is not.

The trial court gave defendant Hastings the benefit of the emergency rule, and properly so, on the theory that the jury could find that he was confronted with an emergency situation when the Gabrielson vehicle came to a hard slowdown in front of him, following the maneuvers by plaintiff of his vehicle. It was for the jury to determine as fact issues whether plaintiff gave adequate warning or signals of his intentions in changing course or slowing down his vehicle suddenly.

Plaintiff contends that the defendant Hastings' failure to see the flashing light on plaintiff's automobile constituted an intervening cause and that plaintiff's violation of the signal requirements of our highway statutes was not, therefore, a proximate cause of the collision. The mere fact that Hastings was in the passing lane, traveling behind the Gabrielson vehicle, would not constitute an intervening cause as a matter of law, especially in view of the fact that the jury could find from the evidence that plaintiff did not give adequate or timely signals of his change of course and intended maneuvers on the highway at the time in question. The accident that took place followed almost immediately after plaintiff had pulled out in front of the Gabrielson car. Therefore, any alleged act or omission of Hastings occurred so near in time to the accident that in the remaining time interval it could hardly have had the effect either of stopping or breaking the natural sequence and progression of the original negligence of plaintiff as a proximate cause. See, Benson v. Hoenig, 228 Minn. 412, 37 N. W. (2d) 422; Lee v. Lee, 248 Minn. 496, 80 N. W. (2d) 529, 67 A. L. R. (2d) 176; 13B Dunnell, Dig. (3 ed.) § 7005.

There was considerable testimony during the trial concerning the location of skid marks and debris upon the highway at the scene of the accident. While this testimony as to the physical facts was not positive proof of how the accident happened, it could properly be considered by the jury if helpful to it in determining the fact issues. Carpenter v. Birkholm, 242 Minn. 379, 65 N. W. (2d) 250.

Plaintiff cites Barrett v. Nash Finch Co. 228 Minn. 156, 36 N. W. (2d) 526; Moore v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883, 175 A. L. R. 1007; and Paggett v. Travelers Ind. Co. (La. App.) 99 So. (2d) 173. The Barrett case is very different factually and is readily distinguishable. The Moore case is equally distinguishable on its facts. The accident occurred at an unobstructed intersection. There were no distracting circumstances and we held that the defendant was negligent in failing to see a vehicle approaching in plain sight. The Paggett case also is distinguishable in several respects. The passing vehicle in that case was being driven in excess of the maximum speed limit. The accident occurred at an intersection where the lead driver after making observations began to make a left turn into a roadway and was struck by the passing vehicle, which had not been in the passing lane when the lead car driver had looked prior to commencing the left turn.

Plaintiff also relies on Ondrachek v. Kettner, 256 Minn. 297, 98 N. W. (2d) 91. But this case is also distinguishable on its facts. The lead car in that case was at a dead stop, its signals indicating a left turn at an intersection, and the vehicles were traveling at a slower rate of speed. The conduct of plaintiff in operating his vehicle in the instant case cannot be compared with the conduct of the driver who turned to the left in the Ondrachek case.

Conflicts in the evidence are to be resolved by the jury. We are required to review the evidence and the inferences to be reasonably drawn therefrom in the light most favorable to the prevailing parties. It is only where different minds can reasonably arrive at but one result that fact issues become questions of law justifying a court in substituting its judgment for the jury's. Therefore, where a verdict has the approval of the trial court and it is not manifestly and palpably contrary to the evidence viewed as a whole, it will not be disturbed. Lott v. Davidson,

*supra*; Kuether v. Locke, *supra*; Ballweber v. Kleist, 248 Minn. 102, 78 N. W. (2d) 671.

It was plaintiff's duty to comply with the requirements of § 169.19, subds. 4 to 6. The trial court's instructions properly submitted the negligence of both plaintiff and defendant to the jury, were fair and reasonably complete, and properly stated the law applicable to this case.

Affirmed.