OPINION *Page 2 
{¶ 1} Appellant Michelle Bush, a City of Alliance police officer, appeals her traffic convictions in the Alliance Municipal Court for failure to obey a traffic control device and reckless operation of a motor vehicle. The facts giving rise to this case are as follows:
 {¶ 2} On June 15, 2007, Officer Bush was on duty and driving a marked police cruiser. Officer Bush had completed a run when she heard a dispatch of a person with a gun. She was on the opposite side of the city of Alliance from the location of the gun dispatch. Officer Bush got into her cruiser and drove off without fastening her seatbelt. It is undisputed that she activated her lights, sirens and proceeded on the run. Officer Bush felt it was her duty to respond because several weeks earlier Lt. McElhaney of the Alliance Police Department had instructed officers that in case of an emergency call, such as a person with a gun, any available officer should respond with lights and sirens. Tr. at 56.
 {¶ 3} Officer Bush was traveling westbound on East Ely Street in Alliance, Ohio. As Officer Bush approached the intersection of Ely and Union, she saw a tan van to the right pulled over to the side of road and remained stopped. She looked left and saw a blue Jeep Cherokee, driven by Chris Gray, traveling northbound on Union. She applied her brakes to slow down. Officer Bush testified that the Jeep appeared to be slowing so she thought the driver saw her approaching, and she proceeded into the intersection through a red light. Officer Bush struck the Jeep spinning it upon impact into the tan van. Officer Bush immediately radioed the accident to the dispatcher. *Page 3 
 {¶ 4} Officer Shatzer arrived at the scene and conducted an accident investigation. He requested Lt. McElhaney pull the card out of the digital camera in Officer Bush's cruiser. Officer Shatzer reviewed the card and it revealed that Officer Bush was driving at speeds greater than 75 mph with a maximum speed of 99 mph in residential areas. At the time of impact between Officer Bush's cruiser and Mr. Gray's Jeep, the video from the cruiser camera revealed Officer Bush was driving at a speed of 54 mph. See, State's Exhibit A. One witness reported that Officer Bush tapped her brakes prior to entering the intersection. This was supported by the video from the in-car camera which records cruiser speed, activation of emergency lights and sirens and brake use. Officer Shatzer also interviewed Mr. Gray. Mr. Gray stated that he heard the sirens but did not see the cruiser prior to the collision.
 {¶ 5} Officer Shatzer forwarded his completed accident report and investigation to the chain of command. The chain of command included Lt. McElhaney, Captain Nieb, Assistant Chief Anderson and Chief Dordea. The chain of command ordered Officer Shatzer to issue three citations to Officer Bush: (1) no seatbelt in violation of Alliance Codified Ordinance 337.27(B), (2) failure to obey a traffic control device in violation of Alliance Codified Ordinance 313.01(A), and (3) reckless operation in violation of Alliance Codified Ordinance 333.09(A). The chain of command did not order Officer Shatzer to cite Mr. Gray for failing to yield to an emergency vehicle.
 {¶ 6} On June 18, 2007 Officer Shatzer cited Officer Bush as ordered by the chain of command. All the charges are minor misdemeanors. Officer Bush appeared at the initial arraignment on June 29, 2007 and entered a plea of "not guilty" to all charges. *Page 4 
 {¶ 7} On September 26, 2007, the trial court held a bench trial. Officer Shatzer testified regarding the contents of the video and the results of his investigation. Chief Dordea testified at trial regarding the safe driving policies and procedures of the Alliance Police Department. He also testified that in his opinion Mr. Gray's view was obstructed by a building prior to impact with Officer Bush's cruiser:
 {¶ 8} "My honest opinion is that that building, the white building on the corner there. It would be located on the southeast corner would be in the way of the northbound vehicle. And at the, the way it was moving didn't think I could yield the right of way of that public safety vehicle if I even knew it was there. So, no, in my opinion he did not violate the law by progressing through his green light." Tr. at 43.
 {¶ 9} The trial court found Officer Bush guilty on all charges. The trial court sentenced appellant to a mandatory $30.00 fine plus court costs on the seatbelt violation, a $50.00 fine plus court costs on the traffic control device violation and a $100.00 fine plus court costs on the reckless violation. The trial court suspended appellant's license but gave her occupational, educational, medical and counseling driving privileges during the suspension. The trial court suspended the sentence pending appeal.
 {¶ 10} Appellant now appeals raising two Assignments of Error:
 {¶ 11} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN FINDING HER GUILTY OF THE OFFENSE OF RECKLESS OPERATION OF A MOTOR VEHICLE."
 {¶ 12} "II. APPELLANT'S CONVICTION FOR FAILURE TO OBEY A TRAFFIC CONTROL DEVICE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 5 
 I. and II. {¶ 13} Assignments of error I and II are factually intertwined and will be addressed together. Appellant argues in her first assignment of error that the guilty verdict on reckless operation of a motor vehicle is not supported by sufficient evidence and that the trial court failed to consider the statutory exemptions for emergency vehicles pursuant to R.C. 4511.24. In her second assignment of error, appellant argues the guilty verdict on failure to obey a traffic control device was against the manifest weight of the evidence and that the trial court failed to consider the statutory exemption for emergency vehicles pursuant to R.C. 4511.03.
 A. Standard of Review {¶ 14} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "[a]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus. State v.Osborne, 5th App. No. 07-CA-38, 2008-Ohio-1367. This test raises a question of law and does not allow the court to weigh the evidence.State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *Page 6 
 {¶ 15} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Thompkins, 78 Ohio St .3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89,1997-Ohio-355, 684 N.E.2d 668. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion." State v. Thompkins, supra at 78 Ohio St.3d 390.
 {¶ 16} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N .E.2d 541 superceded by constitutional amendment on other grounds as stated by State v. Smith,80 Ohio St.3d 89, 1997-Ohio-355, 684 N .E.2d 668, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1. *Page 7 
 B. Alliance Codified Ordinances {¶ 17} Appellant was convicted of Alliance Codified Ordinance 333.09(A) which states: "No person shall operate a vehicle on any street or highway without due regard for the safety of persons or property." A violation of this ordinance is a minor misdemeanor.
 {¶ 18} Appellant was also convicted of Alliance Codified Ordinance 313.01(A) which states, in pertinent part,: "No pedestrian or driver of a vehicle shall disobey the instructions of any traffic control device placed in accordance with the provisions of this Traffic Code, unless at the time otherwise directed by a police officer. * * *". A violation of this section is a minor misdemeanor. Alliance Codified Ordinance 313.01(B). We note this ordinance is substantially similar to R.C. 4511.12.[1]
 C. Statutory Exemptions {¶ 19} Appellant argues that the trial court failed to consider the statutory exemptions for emergency vehicles when it found her guilty of the traffic violations. Appellant challenges her reckless operation conviction citing the emergency vehicle exemption under R.C. 4511.24, which states in relevant part:
 {¶ 20} "The prima-facie speed limitations set forth in section 4511.21
of the Revised Code do not apply to emergency vehicles or public safety vehicles when they are responding to emergency calls and are equipped with and displaying at least one flashing, rotating, or oscillating light visible under normal atmospheric conditions from a distance of five hundred feet to the front of the vehicle and when the drivers thereof *Page 8 
sound audible signals by bell, siren, or exhaust whistle. This section does not relieve the driver of an emergency vehicle or public safety vehicle from the duty to drive with due regard for the safety of all persons using the street or highway."
 {¶ 21} Appellant challenges her failure to obey a traffic control device conviction by arguing that the trial court failed to consider the statutory exemption for emergency vehicles under pursuant to R.C. 4511.03(A) which states: "The driver of any emergency vehicle or public safety vehicle, when responding to an emergency call, upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety to traffic, but may proceed cautiously past such red or stop sign or signal with due regard for the safety of all persons using the street or highway."
 D. Due Regard {¶ 22} Prior to analyzing the application of the statutory exemptions to the ordinances and facts of this case, we must examine the meaning of "due regard." The phrase "due regard" means that the driver of an emergency vehicle should operate the vehicle in the same manner as a reasonably prudent person under similar circumstances. Koulianos v.Tribble (1981), 7th App. No. 80 C.A. 114; City of Sylvania v.Badger (1978), 64 Ohio App.2d 78, 411 N.E.2d 195; Radecki v.Lammers (1968), 15 Ohio St.2d 101, 238 N.E.2d 545; State v. Martin
(1955), 164 Ohio St. 54, 128 N.E.2d 7.
 {¶ 23} Several courts have considered the meaning of due regard as applied to emergency vehicles in civil cases. In Semple v. Hope (1984),15 Ohio St.3d 372, 474 N.E.2d 314, the Supreme Court of Ohio held "that an emergency vehicle, responding to emergency with lights flashing and having sounded its siren, may travel left of center through an intersection to avoid stopped traffic as long as due regard is maintained for *Page 9 
safety of others." Id. at syllabus. In another case, the Tenth District Court of Appeals held that a police officer driving a marked cruiser through a major intersection against a flashing light, at an excessive speed and without making reasonable use of the siren was not operating the cruiser with due regard. City of Worthington v. O'Dea (1962), 115 Ohio App.375, 185 N.E.2d 323.
 {¶ 24} We have found two appellate cases which discuss the prosecution of an emergency driver for a failure to show due regard while on an emergency run. In State v. Leggett (1959), 168 N.E.2d 772, 83 Ohio Law Abs. 400, the Seventh District Court of Appeals held that an "ambulance driver, on an emergency run and driving 35 to 55 miles per hour, violated the law in driving through a red traffic signal at an intersection containing a store building which obscured the view to the left so that another vehicle approaching from the left would have difficulty in either hearing the siren or seeing the ambulance or its lights." The Leggett court found that R.C. 4511.03 grants drivers of emergency vehicles a privilege to violate a traffic signal but they owe a duty to safeguard others from any accident. Id. at 773-774. The privilege must only be used when others' rights are not being interfered with. Id. The driver of the emergency vehicle "must make sure before crashing that light that no accident is likely to result." Id. The ambulance driver was convicted of the traffic violation.
 {¶ 25} Conversely, this Court in City of Canton v. Murphy (1986), 5th App. No. CA-6870 looked at the privilege bestowed upon emergency vehicle drivers. In the case, a Canton City K-9 unit received a "crime in progress" call at approximately 10:00 p.m. The dispatch further explained it was a possible breaking and entering. The officer proceeded to the location with lights and sirens in operation. As he approached the *Page 10 
intersection near the location, he turned off his siren to avoid warning any suspects of his arrival. The officer proceeded through the intersection using his horn to alert other drivers of his approach. The officer attempted to pass a van to the left. The driver of the van, without signal, made a left hand turn into the cruiser causing a collision. The officer was charged with the equivalent of Alliance Codified Ordinance 313.01(A), the failure to obey a traffic signal. The driver of the van was charged with DUI. This Court recognized that prima facie speed limitations do not apply to emergency vehicles citing the Canton City Ordinance which is the same as R.C. 4511.24. Further, the Court cited another Canton City Ordinance which is verbatim to R.C. 4511.03. The Court held that the officer "was not guilty of any crime by reason of his passing left of center at this intersection." Id. at 3. The Court stated a key factor was that the officer was following departmental policy in turning off his siren. Id.
 {¶ 26} In the case sub judice, Chief Dordea testified regarding the safe driving policy and procedures of the Alliance Police Department, which state:
 {¶ 27} "III. Policy
 {¶ 28} A. All personnel operating police vehicles shall operate such vehicles in a manner as to comply with local and state laws.
 {¶ 29} 1. When on duty police personnel drivers and front-seat passengers shall wear safety belts, providing the vehicle is so equipped.
 {¶ 30} B. All personnel operating police vehicles in a manner as to comply with all rules, regulations and procedures of this Police Department.
 {¶ 31} C. All personnel operating police vehicles shall, at all times, exercise due caution and proper judgment. *Page 11 
 {¶ 32} D. Roughness or carelessness in the operation of police vehicles will not be tolerated." See, State's Exhibit B.
 {¶ 33} The above policy is consistent with use of due regard embodied in R.C. 4511.03(A) and 4511.24 for emergency runs such as the one in this case.
 E. Convictions {¶ 34} The trial court convicted appellant of reckless operation based on the evidence in the video from the cruiser camera. Appellant challenges the conviction arguing speed limits do not apply to emergency vehicles on an emergency run and that the reckless operation charge was based solely on an allegation of excessive speed.
 {¶ 35} The question before this Court is whether the evidence on the in-car camera system supports a conviction for reckless operation when viewing the evidence in a light most favorable to the prosecution. We answer this question affirmatively.
 {¶ 36} A review of the video from the in-car camera system review reveals Officer Bush was traveling in a residential area at speeds in excess of 75 mph. See, State's Exhibit A. She hit a top speed of 99 mph. Id. Upon impact with Mr. Gray's Jeep Cherokee her speed was 54 mph. Id. Although the speed limitations do not apply to emergency vehicles on an emergency run, an officer must use due regard.
 {¶ 37} The video shows appellant traveling at high rates of speed in residential areas during the early evening hours. There was evidence that the intersection view of northbound was obstructed. Chief Dordea testified that a white building shown in the video obstructed the view of Mr. Gray from seeing the cruiser. Further, Officer Shatzer's interview of Mr. Gray revealed that Mr. Gray heard the siren but did not see the cruiser. Tr. at 21. Based on this testimony, the speed at which a cruiser approached *Page 12 
the intersection is important in the due regard analysis. If northbound approaching vehicles view of the intersection was obstructed, a cruiser should slow as they approached to give vehicles and pedestrians reaction time to avoid a collision with the cruiser. Here, Officer Bush did not slow down enough to allow for that reaction time. This case is factually similar to State v. Leggett, supra. As discussed in that case, the ambulance driver was also convicted of a traffic violation for not exercising due regard when a building obstructed his view as he approached the intersection.
 {¶ 38} It is undisputed that Officer Bush was on an emergency run, however Officer Shatzer testified that "most of the units on duty were responding" to this call. Tr. at 8. Further, Chief Dordea testified that "she was about as far north and east as- I'm sorry, as far south and east of the location of this gun call as you could possibly get and still remain in the city." Tr. at 46. Because so many officers were responding to the run and appellant was located at such a far distance from the run, a reasonable prudent police officer should have (1) evaluated the need to use excessive speed in a residential area and (2) considered the blind spot at the intersection when ascertaining due regard for the safety of other vehicles.
 {¶ 39} Upon a careful and complete review of the record, we find the State met its burden of production at trial. When the evidence is viewed in a light most favorable to the prosecution, Officer Bush's conviction for reckless operation was supported by sufficient evidence to prove the elements of the violation beyond reasonable doubt. Likewise, we further find Officer Bush's conviction under Alliance Codified Ordinance 313.01(A) for the failure to obey a traffic control device was not against the manifest weight of the evidence as appellant did not exercise due regard in proceeding through a *Page 13 
traffic control device on an emergency run. Mr. Gray's view of the intersection and the oncoming cruiser was obstructed by a building as testified to by Chief Dordea based upon his review of the video. Appellant was responding to this call along with most other officers on duty at the time of the call and Appellant acknowledges in her brief that she was responding to a "general dispatch."
 {¶ 40} This decision is not intended to have a chilling effect on officers responding to emergency calls. It is a reminder that officers need to respond with due regard to the safety of others when responding to those emergency calls.
 {¶ 41} For the foregoing reasons. Accordingly, appellant's first and second assignments of error are overruled.
 {¶ 42} The decision of the Alliance Municipal Court is affirmed.
 Delaney, J. Farmer, P.J. and Edwards, J. concur. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] R.C. 4511.12 states: "No pedestrian, driver of a vehicle, or operator of a streetcar or trackless trolley shall disobey the instructions of any traffic control device placed in accordance with this chapter, unless at the time otherwise directed by a police officer. * * *." *Page 1