STATE EX REL. ADELINE CODUTI v. WALTER U. HAUSER AND OTHERS.[1]

February 9, 1945.

No. 33,924.

[1]Reported in 17 N. W. (2d) 504.

*Fred A. Ossanna* and *Carl K. Lifson,* for appellant.

*R. S. Wiggin,* City Attorney, and *Carsten L. Jacobson,* Assistant City Attorney, for respondents.

JULIUS J. OLSON, JUSTICE.

Relator by *mandamus* sought to be restored or reinstated to the position of social service investigator of Minneapolis in the division of public relief. She appeals from an adverse judgment entered in conformity with the trial court's order denying her motion for judgment on the pleadings and directing a dismissal of her cause.

These are the facts: Relator was employed in the classified service of Minneapolis as a social service investigator for the division of public relief of the department of public welfare. She entered upon her work May 5, 1934, following a competitive civil

service examination for that position and continued in that service until November 1, 1941, when, pursuant to her request, a maternity leave of absence for one year was granted. The request for this leave and its grant were made pursuant to civil service Rule X, which provides:

"Section 1. Leave of absence without pay * * *

"(d) Leave in Excess of Six Months. Where a leave of absence without pay has been granted in excess of six months, and it has became necessary for the department head to fill the employe's position beyond the six months' period, employe on leave of absence shall have his name placed on the lay-off eligible list at the termination of his leave, except as provided for in sub-section (c), Military Leave [amended February 24, 1943, by adding the words "and sub-section (e)"].

"(e) Maternity Leave. In all cases where leave of absence without pay is granted for expected maternity, leave of absence shall be for a period of one year. Such leave shall begin at least four months before the birth of the child and shall extend for at least eight months thereafter. * * *

* * * * *

"Section 4. Right of Employe to Retain Position. When leave of absence with or without pay is granted, it is with the definite understanding that the employe at the expiration of his leave will be restored to the position vacated by him except as provided for in Section 1, sub-section (d)."

Minneapolis is governed by a home-rule charter, c. 19 of which relates to the establishment of a civil service system for the city. It is the enabling legislation on the subject presently involved. Included in its provisions is the authority granted to the civil service commission to conduct competitive examinations, provide for promotions, and make rules for the conduct of the entire system.

At the time of entering upon her maternity leave, relator was one of some 90 social service investigators employed in the division.

All of these, including relator, were permanent employes who had served their full probationary period. Their work was of the same general nature. No one was subject to assignment to a special position within his or her classification; any investigator could do the work of another.

Prior to the granting of relator's leave of absence, the number of persons on relief in the city had been steadily decreasing; hence need for the services of investigators had correspondingly declined. Consequently, their number was reduced as the number of persons on relief decreased. During the time of relator's absence on leave, some 22 of these had been "laid off." Six more had received notice of a "lay-off," effective the day following the expiration of relator's leave. Since that time the staff of investigators has been further reduced. These reductions were made in conformity with Rule XI, which reads:

"Section 1. Lay-off—Reduction of Force. Whenever any permanent position is abolished or it becomes necessary, through lack of work or lack of funds, or other causes, to reduce the number of officers or employes in the classified service in any department or administrative branch, the appointing or employing officer or head of department shall immediately report such lay-off upon the form prescribed and furnished by the Civil Service Commission, and a notice of such lay-off shall be given to the officer or employe laid off.

"Section 2. Order of Lay-off. Except when lay-off is requested by the employe for sickness or other good reason or where the position is abolished, lay-off shall be made in accordance with the following provisions:

\* \* \* \* \*

"4. Permanent employes; the employe first laid off shall be the employe in a department who was last certified to the class and grade in which the reduction is to be made.

"Section 3. \* \* \*

"(b) Whenever a seniority list has been established by a department for any grade, and approved by the Commission, lay-off

shall be made on the basis of seniority, the lowest in line to be laid off first."

As relator's leave of absence was approaching its end but before it expired, she properly notified the department and the superintendent of public relief of her desire to resume her work. This was on October 29, 1942. She reported for work November 2, the date of the expiration of her leave, but was informed that her position was no longer open and that she was being placed on the "lay-off" list. She made frequent demands thereafter, as did her counsel, all of which requests and demands were refused.

When relator reported for duty there were at least 30 social service investigators junior to her in point of service on the seniority list. Eighteen of such juniors were still on the list when this cause was commenced. During the time of relator's absence on leave, as to the personnel in her class so laid off, the seniority basis had been recognized and adhered to, *i. e.*, those at the bottom of the list were laid off and those having priority were retained.

Respondents concede the facts we have recited, but allege that on the subject of maternity leave, Section 1(d) of Rule X was amended February 24, 1943, by adding the following words: "and subsection (e)." At the same time there was added to subsection (e) this proviso:

"* * * Provided, however, that where a maternity leave has been granted and employe's name is placed on the lay-off list at the expiration of said leave as provided in (d), her seniority and original order of certification shall prevail in re-certification to the department from which she has been laid off."

It will be noted these changes were made several months after relator's leave of absence had expired and after she had reported for duty.

The trial court in its memorandum had this to say with respect to relator's competency, faithfulness, and integrity:

"The court feels that some mention should be made of the fact that it appeared during the trial that plaintiff was not dismissed

or reinstated by the defendants for any cause going to her integrity or faithfulness, it appearing that at all times she had been ambitious, trustworthy and competent; the action on the part of defendants being for reasons of their own not in any way attacking or criticizing the character of plaintiff or her work."

The city's home-rule charter, c. 19, § 11, provides:

"No officer or employe after six months' continuous employment shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard in his own defense."

It is conceded that relator was not "removed or discharged" for cause. As found by the trial court, she was not dismissed or her reinstatement refused by respondents "for any cause going to her integrity or faithfulness," but, rather and only, that their action was *"for reasons of their own not in any way attacking or criticizing the character of plaintiff or her work."* (Italics supplied.)

■ The office of a writ of *mandamus* is well stated in State ex rel. McGill v. Cook, 119 Minn. 407, 411, 138 N. W. 432, 434, Ann. Cas. 1914B, 88:

"* * * a writ of mandamus will issue only to compel the performance by an inferior tribunal, corporation, board, or person, of an act which the law specifically enjoins as a duty resulting from an office, trust, or station."

■ In State ex rel. Schwartzkopf v. City Council of Brainerd, 121 Minn. 182, 187, 141 N. W. 97, 99, 46 L.R.A.(N.S.) 9, we said, quoting from Mr. Justice Marshall's opinion in State v. Anderson, 100 Wis. 523, 527, 76 N. W. 482, 483, 42 L. R. A. 239:

"Before the petitioner for a writ of mandamus is entitled thereto, he must show more than that there is a public wrong specially injurious to him. He must show that such wrong consists of some failure of official duty clearly imposed by law, and that there is no other adequate specific legal remedy. The duty must be positive, not discretionary, and the right must be so clear as not to admit of any reasonable controversy. These principles are so

elementary as not to call for discussion or support by a citation of authorities."

We may well agree with these contentions of respondents:

■ "The rules of the Commission, having all the force and effect of statutory law, should be sustained unless they violate constitutional guaranties, controlling state legislation or the provisions of the [Minneapolis home-rule] charter pursuant to which they were adopted."

■ Also, under our decisions:

"* * * The legislature is at liberty to ignore logic and perpetrate injustice as long as it does not transgress constitutional limits. So if the law as it stands results in injustice, it is for the legislature to remove the cause. It must be done by amendment rather than construction, there being no ambiguity in the later law." State ex rel. Timo v. Juvenile Court, 188 Minn. 125, 128, 129, 246 N. W. 544, 546.

That case was cited with approval and applied in Olson v. City of Virginia, 211 Minn. 64, 66, 300 N. W. 42, 43, 136 A. L. R. 1365, and again in Freeman v. City of Minneapolis, 219 Minn. 202, 17 N. W. (2d) 364.

Applying the principles stated in the foregoing subdivisions of this opinion to the facts we have related, the problem presented is whether, as claimed by relator, denial of reinstatement under Rules X and XI is an illegal removal or discharge; or, as asserted by respondents, that the commission under these rules (especially Rule X, as amended) was justified in concluding that relator should be placed in the "lay-off" class. They contend that these rules were adopted—

"for the regulation of two entirely different employment situations. The first of these were seniority rules applicable as between employees on active duty or absent on leave for less than six months. The second were preferential employment rules applicable as between employees on active duty and those who are absent on leave

for more than six months. The Commission, through these rules, made the general seniority rights of employees absent on leave for more than six months subordinate to the preferential employment rights of junior employees in positions which they have held for more than six continuous months."

Respondents' arguments may appear at first sight plausible, but, after a careful reading of Rule X as applied to one in relator's situation, such arguments do not appeal to an unbiased mind as being of convincing force. Section 1(e) thereof (Maternity Leave) was obviously enacted to safeguard the tenure of one in relator's position. She had definite seniority rights in the classified service— when her mandatory year of leave expired, her former job should, at her option, be open to her. By its terms, "In all cases" where such leave had been granted, it was (§ 4) "with the definite understanding that the employe at the expiration of his leave will be restored" to his former position.

Charity forbids the thought that changes in the rules made subsequent to the time when relator's rights and remedies had attached were intended so adversely to affect her rights as to put her in the class of Rule XI, which pertains strictly to "Lay-off— Reduction of Force." Her position was a permanent one. Respondents concede that "Her work had been satisfactory and the only reason for her lay-off was that the department no longer needed her services." Rule X, Section 1(e), was clearly intended for the protection of seniority rights. It is clear from its language that maternity was not to be lightly treated nor relator's position and her right to reinstatement lessened or, in this case, for all practical purposes, destroyed, because motherhood had made her leave necessary. Respondents' theory is abhorrent to reason and violates all the rules of what is termed *justice*. The commission's rules under the charter were intended to establish and maintain civil service as a means of securing stability in public service. This is recognized by respondents, since in their brief they quote 2 Dillon, Municipal Corporations (5 ed.) § 479, where the author states:

■ "The purpose of the civil service statutes and of other laws prohibiting the discharge of employees without cause assigned, notice, and a hearing, is to insure the continuance in public employment of those officers who prove faithful and competent, regardless of their political affiliations."

Relator's position was not abolished, nor had her work become unnecessary.

■ Relator's leave was granted for the mandatory period of one year. Section 1(d) of Rule X provides that where leave beyond six months has been granted "and it has become necessary for the department head to fill the employe's position beyond the six months' period," then such employe shall have his name placed on the lay-off eligible list. Here, it did not become *necessary to fill* relator's position during her absence, because there was a surplus of qualified investigators who, like her, had permanent positions in that service but were her juniors on the seniority list. In this situation, there was neither need nor necessity for the department to fill her position by a new employe. Absent the occurrence of motherhood, the facts clearly show that relator's tenure in her position would have continued without interruption. The controlling purpose sought to be accomplished by the rules we have been discussing was to protect relator, not to deprive her of her position.

In the circumstances here appearing and upon the facts here shown, relator's rights should be measured by the rules as they were when she was granted her leave and as they remained when she made her application to be restored to her former employment. As we have seen, the changes in the rules were not adopted until February 24, 1943, nearly three months after she had tendered her services and sought to reënter her former employment. Until then, maternity leave was not subject to the limitations upon which respondents rely. We think respondents may not, by an *ex post facto* rule, or, in the language of the trial court, "for reasons of their own," deprive relator of her seniority rights. The judgment

therefore must be and is reversed, with instructions to grant relator the relief sought.

So ordered.

