STATE of Minnesota, City of St. Louis Park, Appellant,

v.

Andrew David SCHOLBERG, Renee Zitzloff, et al., Respondents.

Nos. C9–87–1008, C8–87–1016.

Court of Appeals of Minnesota.

Sept. 22, 1987.

Review Denied Nov. 13, 1987.

Hubert H. Humphrey, III, Atty. Gen., Peter A. Cahill, Asst. St. Louis Park City Atty., Patrick W. Ledray, Minneapolis, for the State.

Daniel Klas, St. Paul, for Ronda Chinn and Renee Zitzloff.

George Kadinger, St. Paul, for Scholberg.

Heard, considered and decided by FOLEY, P.J., and PARKER and SEDGWICK, JJ.

## OPINION

PARKER, Judge.

Respondents were arrested for trespassing on private property. The trial court dismissed the charges. The state appealed, and the cases were consolidated on appeal. We reverse, holding that the trespassing charges must be reinstated.

## FACTS

On November 21, 1986, respondents Renee Zitzloff, Ronda Chinn and Andrew Scholberg attempted to disseminate anti-abortion literature and talk to passersby from the front sidewalk of the Meadow-brook Medical Building. The demonstration took place on a wide sidewalk under an overhang at the building's main entrance. James Quick, Methodist Hospital's security supervisor, informed the demonstrators that they were on private property and asked that they leave. Respondents refused to leave and were subsequently arrested for trespass.

Meadowbrook Medical Building, Inc., leases the sidewalk area and the property on which the Meadowbrook Medical Building (Meadowbrook) is situated from Methodist Hospital. Both the building and the sidewalk area are located entirely within Methodist Hospital's private property. Meadowbrook houses the Meadowbrook Women's Clinic which, among other functions, provides abortion and abortion counseling to pregnant women. Meadowbrook's tenants also include approximately 110 physicians and dentists and 24 businesses.

Two drives with entrances at Excelsior Boulevard and Louisiana Avenue provide access to Meadowbrook. These drives are located on the hospital's property. A semaphore controls traffic at the intersection of one drive and Excelsior Boulevard. Public sidewalks parallel Excelsior Boulevard and Louisiana Avenue.

Meadowbrook's management company and Methodist Hospital prohibit all protest activity and the distribution of unapproved literature on their property. Historically, the only solicitation the hospital has permit-

ted is its own United Way campaign drive. People are free to demonstrate without authorization on the public sidewalk next to Louisiana Avenue and on the center island of the drive intersecting Excelsior Boulevard. On numerous occasions, people at the Excelsior intersection have distributed literature to people entering and leaving hospital property.

The trial court specifically found that the demonstration area was on private property. It also found that demonstrators had access to the property for expressive purposes at the drive entrances to the hospital property at Excelsior Boulevard and Louisiana Avenue. Nevertheless, the court concluded:

> Because of the traffic situation and the distance of the said entrances from the Meadowbrook Office Building, the entrance sites would not offer reasonable access by the defendants to the intended audience to whom they wished to disseminate information.

Thus, the court dismissed the trespassing charges. The state appeals.

## ISSUES

1. Did the trial court err in dismissing trespassing charges against respondents?

2. Does the Minnesota Constitution provide respondents with greater expressive rights than the United States Constitution?

## ANALYSIS

### I

This is a case of conflicting rights—between demonstrators' free speech rights and a private-property owner's right to exclude.

Zitzloff and Chinn were charged with trespassing under Minn.Stat. § 609.605, subd. 1(5) (1986). Scholberg was charged with trespassing under section 12–503 of the St. Louis Park Ordinance Code. They were attempting to distribute anti-abortion literature on private property at the time of their arrests.

As a general rule, the constitutional guarantee of free speech protects only against abridgment by the government. *Hudgens v. National Labor Relations Board,* 424 U.S. 507, 513, 96 S.Ct. 1029, 1033, 47 L.Ed.2d 196 (1976). It does not provide redress against abridgment by private individuals or corporations. *Cherne Industrial, Inc. v. Grounds & Associates, Inc.,* 278 N.W.2d 81, 94 (Minn.1979). It does not permit persons to exercise their first amendment free speech rights on private property over the owner's objections. The Supreme Court has "never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only." *Lloyd Corp., Ltd. v. Tanner,* 407 U.S. 551, 568, 92 S.Ct. 2219, 2228, 33 L.Ed.2d 131 (1972).

▮ Scholberg presents the novel argument that the nature of a sidewalk's use, and not its title of ownership, governs whether a privately owned sidewalk should be accorded public forum treatment.[1] He contends that Meadowbrook's sidewalk is virtually indistinguishable from any other public sidewalk in a municipality. A public bus stop is within 65 feet of the building's entrance and no gate or chain prevents people from entering the hospital's property on two access drives 24 hours a day. He thus concludes this court should treat the Meadowbrook sidewalk as a public forum.

Scholberg's reliance on *United States v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983), is misplaced. *Grace* addressed access to a publicly owned sidewalk. Furthermore, Supreme Court cases clearly distinguish between free speech rights of persons on public, as compared to

---

1. In public forums "the government may enforce reasonable time, place, and manner regulations as long as the restrictions are 'content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *United States v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 1707, 75 L.Ed.2d 736 (1983) (citing *Perry*

*Education Association v. Perry Local Educators' Association,* 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983)). "Public places," historically associated with the free exercise of expressive activities, are considered to be "public forums." *Grace,* 461 U.S. at 177, 103 S.Ct. at 1707. Sidewalks, streets and parks are generally included within this definition.

private, property. In *Lloyd Corp., Ltd. v. Tanner,* 407 U.S. 551, 559–60, 92 S.Ct. 2219, 2224, 33 L.Ed.2d 131 (1972), the Supreme Court noted that "privately owned streets, sidewalks, and other areas of a shopping area" are not for all purposes and uses analogous to publicly owned facilities. There the Court did not find that demonstrators had a constitutional right to demonstrate on a shopping center's private sidewalks simply because the public was invited.

"[O]ne of the essential sticks in the bundle of property rights is the right to exclude others." *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 82, 100 S.Ct. 2035, 2041, 64 L.Ed.2d 741 (1980). Even publicly owned property does not become a "public forum" simply because members of the public are permitted to come and go at will. *Grace,* 461 U.S. at 177, 103 S.Ct. at 1707. Merely because the public is invited to use Meadowbrook's sidewalk to enter the building to visit patients, see doctors, make purchases at the stores, or have abortions at the clinic does not render Meadowbrook's sidewalk a public forum.

■ Scholberg also claims this court held that the sidewalk in front of Meadowbrook is public in *State v. Scholberg,* 395 N.W.2d 454 (Minn.Ct.App.1986) (*Scholberg I*). In that case this court upheld the conviction of Scholberg, the respondent here, for trespassing in Meadowbrook's lobby and stated, "[t]he sidewalk outside the building is public property and may be used to disseminate literature." *Id.* at 456. Ownership of the sidewalks around Meadowbrook was not essential to the decision in *Scholberg I.* The trespass area in *Scholberg I* was Meadowbrook's privately owned lobby. Moreover, people may demonstrate on the *publicly owned* sidewalks outside the hospital's property along Louisiana Avenue and Excelsior Boulevard. Our reading of *Scholberg I* convinces us that we were there referring to these publicly owned sidewalks appurtenant to public streets. Indeed, people frequently demonstrate there with impunity.

■ Although the general rule is that the constitutional guarantee of free speech is a guarantee only against abridgment by the government, there is an exception. Under *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), a state may not impose criminal liability on an individual who distributes literature on the sidewalks and streets of a company-owned town or its functional equivalent. *Hudgens,* 424 U.S. at 520, 96 S.Ct. at 1036; *Marsh,* 326 U.S. at 509, 66 S.Ct. at 280. In *Marsh* a Jehovah's Witness was convicted of trespass for distributing literature without a license on a sidewalk in Chickasaw, Alabama, a company-owned town. Chickasaw had "all the characteristics of any other American town" including, among other things, residential buildings, streets, a sewer system, a "business block," a deputy serving as the town's policeman, and a United States Post Office.

> In short, the town and its shopping district [were] accessible to and freely used by the public in general and there [was] nothing to distinguish them from any other town and shopping center except the fact that the title to the property belong[ed] to a private corporation.

*Marsh,* 326 U.S. at 503, 66 S.Ct. at 277. The defendant's activity would clearly have been permitted had title to Chickasaw belonged to a municipal corporation. *Id.* at 504, 66 S.Ct. at 277. Concluding that the company's "property interests" should not be allowed to lead to a different result in Chickasaw, which did not function differently from any other town, the Court reversed defendant's conviction on free speech grounds. *Hudgens,* 424 U.S. at 514, 96 S.Ct. at 1033 (citing *Marsh,* 326 U.S. at 506–08, 66 S.Ct. at 278–79).

Courts have most frequently applied the *Marsh* exception to privately owned shopping centers. In *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.,* 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), the Supreme Court examined the similarities between a privately owned shopping center and the "business block" of Chickasaw involved in *Marsh,* concluding that the shopping center was the functional equivalent of that district. *Id.* at 325, 88 S.Ct. at 1612. Based on that

conclusion, the Court held that the peaceful picketing of a business located within the the shopping center could not be enjoined on the ground that the private property owners objected. Rather, the property had to be treated the same as business districts on public property.

After *Logan Valley*, the Supreme Court held in *Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131, that demonstrators against the Vietnam War had no free speech rights to distribute handbills in a private shopping center contrary to the owner's policy against all hand-billing. *See id.* at 567–69, 92 S.Ct. at 2228–29. Although the Court attempted to distinguish *Logan Valley*, in *Hudgens* the Court admitted that *Lloyd* effectively rejected both the rationale and holding of *Logan Valley*. *Hudgens*, 424 U.S. at 517–19, 96 S.Ct. at 1035–36.

In *Hudgens* the Court again concluded that free speech rights were not implicated when demonstrators attempted to advertise their strike against a store in an enclosed, privately owned shopping mall. *Hudgens*, 424 U.S. at 521, 96 S.Ct. at 1037. That mall contained 60 retail stores and parking for 2,640 cars. *Id.* at 509, 96 S.Ct. at 1031. The *Hudgens* court found that the shopping center was not the functional equivalent of a municipality. *Id.* at 520–21, 96 S.Ct. at 1036–37. *Hudgens* thus clarified that *Marsh* is a very narrow exception, applicable only when the private "property has taken on *all* the attributes of a town." *See id.* at 516, 96 S.Ct. at 1035 (citing *Logan Valley*, 391 U.S. at 332, 88 S.Ct. at 1615 (Black, J., dissenting)).

Chinn and Zitzloff argue that *State v. Miller*, 280 Minn. 566, 159 N.W.2d 895 (1968), governs this case. In *Miller* the Minnesota Supreme Court summarily applied *Logan Valley* to a case involving defendants who had been convicted of trespassing at the Midway Shopping Center for distributing pamphlets on behalf of a political candidate. Relying exclusively on *Logan Valley* for its holding, the court reversed the defendants' convictions. *Id.* at 567, 159 N.W.2d at 896. Respondents' argument is unpersuasive. Because *Hudgens* overruled *Logan Valley*, *Miller* is no longer good law.

Throughout the proceedings, the trial court and the parties have presumed that current law entitles demonstrators, in general, to a reasonable opportunity to reach their targeted audience. Under *Hudgens*, however, demonstrators are clearly not entitled access—reasonable or otherwise—to their targeted audience on private property over the owner's objections. In *Lloyd* the Court carefully distinguished *Logan Valley*, resting part of its decision on the finding that

> the store [to be picketed in *Logan Valley*] was located in the center of a large private enclave with the consequence that no other *reasonable opportunities for the pickets to convey their message to their intended audience were available.*

*Lloyd*, 407 U.S. at 563, 92 S.Ct. at 2226 (emphasis added). When the *Hudgens* court overruled both the holding and rationale of *Logan Valley*, it also extinguished any notion that a private owner could be forced to provide demonstrators with a forum in which to vent their views absent the *Marsh* exception. *See Hudgens*, 424 U.S. at 520–21, 96 S.Ct. at 1036–37.

The parties have also made too much of this court's opinion in *Scholberg I*, in which this court stated:

> A person may be permitted to distribute literature on private property over the owner's objections only where the individual has *no other reasonable opportunity to reach the intended audience.*

*Id.*, 395 N.W.2d at 457 (emphasis added). The import of this statement is evident in the context of a paragraph of the opinion discussing the *Marsh* exception. *See id.* at 457. To the extent that clarification is necessary, we reiterate that reasonable access is irrelevant absent the *Marsh* company-town exception.

As is readily apparent from *Hudgens*, respondents have no free speech rights on the hospital's private property. The *Marsh* exception is inapplicable on the facts of this case.

Zitzloff and Chinn urge this court to interpret the Minnesota Constitution to protect their expressive activities on pri-

vate property. A state, in the exercise of its police power, may under its own constitution adopt liberties more expansive than those conferred by the United States Constitution. *Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980). Assuming respondents properly raised this issue below, we note that this court's function is not to adopt constitutional principles more expansive under the Minnesota Constitution than under the United States Constitution. Such decisions are more properly left to the Minnesota Supreme Court. Further, the Minnesota Supreme Court has been cautious in establishing more expansive rights under the Minnesota Constitution. *See, e.g., State v. Fuller*, 374 N.W.2d 722, 726–27 (Minn.1985) (reversing this court's holding that the Minnesota Constitution's double jeopardy clause precluded retrial when the United States Constitution would not); *AFSCME Councils 6, 14, 65 & 96, AFL–CIO v. Sundquist*, 338 N.W.2d 560, 570 n. 12 (Minn.1983) (reiterating that the prohibition against arbitrary legislative action embodied in the state equal protection clause, the state uniformity clause and the state special legislation clause is coextensive with that afforded by the federal equal protection clause); *State v. Century Camera, Inc.*, 309 N.W.2d 735, 738 n. 6, 740 (Minn.1981) (the protection of commercial speech guaranteed by the Minnesota Constitution is no more extensive than the protection provided by the federal constitution).

### DECISION

The trial court erred in dismissing the trespassing charges against respondents. Respondents had no constitutional free speech rights to demonstrate on a private sidewalk over the owner's objections. We decline to interpret the Minnesota Constitution to provide free speech rights more expansive than those provided by the United States Constitution.

Reversed.