**STATE of Minnesota, Appellant,**

v.

**Freeman Algot WICKLUND, et al., Respondents.**

No. C7-97-1381.

Court of Appeals of Minnesota.

April 7, 1998.

Hubert H. Humphrey III, Attorney General, St. Paul; and Sandra Henkels Johnson, Bloomington City Attorney, Bloomington, for appellant.

Larry B. Leventhal, Michael C. Hager, Larry Leventhal & Associates, Minneapolis, for respondents.

John M. Sheran, Jeffrey A. Eyres, Susan M. Humiston, Leonard, Street and Deinard, P.A., Minneapolis, for amicus curiae Mall of America Company.

Randall D.B. Tigue, Minneapolis, for amicus curiae Minnesota Civil Liberties Union.

Carla J. Heyl, St. Paul, for amicus curiae League of Minnesota Cities.

Charles F. Webber, Faegre & Benson LLP, Minneapolis; and Edward J. Sack, New York City, of counsel for amicus curiae International Council of Shopping Centers, Inc.

Carla J. Pedersen, Richard L. Evans, McGrann Shea Franzen Carnival Straughn & Lamb, Minneapolis, for amicus curiae Greater Minneapolis Building Owners & Managers Association and Building Owners and Managers Association International.

Considered and decided by HUSPENI, P.J., and RANDALL and MANSUR,* JJ.

## OPINION

MARTIN J. MANSUR, Judge.

This appeal is from a pretrial order denying respondents' motion to dismiss but ruling in respondents' favor on the legal issue of whether the Mall of America is a "public forum" for purposes of the free speech provision of the Minnesota Constitution. Respondents are charged with misdemeanor trespassing. Minn.Stat. § 609.605, subd. 1 (1996). We reverse.

## FACTS

Respondents Freeman Wicklund, Althea Schaffer, Peter Eckholdt, and Alissa Eggert are charged with entering the Mall of America on May 19, 1996, as part of a group of about 10 people protesting on behalf of animal rights. They allegedly stood in the courtyard in front of Macy's department store, carrying signs and passing out leaflets

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. Art. VI, § 10.

directed at Macy's sale of fur coats. They allegedly refused the request of Mall of America security personnel to leave the area because they were in violation of the Mall's rules regarding unauthorized distribution of literature and picketing. The group was advised that there were public areas available for protest on public sidewalks outside the Mall, and some agreed to leave voluntarily, but respondents refused and were arrested by Bloomington police. Respondents were charged with misdemeanor trespassing.

Respondents moved to dismiss the charges on grounds that the Bloomington trespassing ordinance was being unconstitutionally applied to them, and that First Amendment activities were protected in the Mall of America. After the state filed a response to the motion, the trial court issued an order soliciting briefing on the issue of whether the state constitutional protection for free speech applied to respondents' activities at the Mall of America. The court also posed additional factual questions. The parties filed additional memoranda, and the trial court granted both the Minnesota Civil Liberties Union (MCLU) and the Mall of America leave to participate as amicus curiae, and they filed amicus memoranda.

At an evidentiary hearing on the motion to dismiss, the parties presented a stipulation of facts and a list of exhibits. Testimony was presented concerning the financing of the Mall of America, the Mall's relationship with the Bloomington Port Authority and the City of Bloomington, including the Bloomington police department, the general phenomenon of enclosed shopping malls, and the details of the May 19, 1996, demonstration at which respondents were arrested.

The trial court issued an order denying the motion to dismiss, but agreeing with respondents' argument that the Mall of America is a "public forum" for purposes of the free speech provision of the Minnesota Constitution. The trial court concluded that the free speech provision of the state constitution should be construed more expansively than its federal counterpart, that given the sub-

stantial public subsidy involved in its construction, the Mall of America is not "private" in any meaningful sense, that the Mall was "born of a union with government," and that the Mall could impose only reasonable time, place and manner restrictions on the exercise of free speech. Although the court agreed with respondents' free speech argument, it denied their motion to dismiss, finding that respondents did not show that they had tried to get the Mall's permission for their demonstration or that such a request would have been futile.

## ISSUE

Does the free speech provision of the Minnesota Constitution apply to respondents' expressive conduct at the Mall of America?

## ANALYSIS

 This court generally reviews a pretrial order appealed by the state under the clearly erroneous standard. *See, e.g., State v. Jones,* 518 N.W.2d 67, 69 (Minn.App.1994) (in pretrial appeal, state must show clearly and unequivocally that district court erred and, unless reversed, error will have critical impact on outcome of trial), *review denied* (Minn. July 27, 1994). The issue presented here, however, is the proper construction of a state constitutional provision, a question of law that this court may review de novo. *See generally State v. Stallman,* 519 N.W.2d 903, 906 (Minn.App.1994) (constitutionality of statute is legal issue reviewed de novo by appellate court). Although respondents attempt to frame the issue before this court as a factual issue to which the clearly erroneous standard might apply, the trial court's order presents a legal ruling reviewable under a de novo standard of review.

The United States Supreme Court has held that the free speech guarantee of the federal Bill of Rights does not extend to expressive conduct that occurs within the confines of a privately-owned shopping center. *See Lloyd Corp., Ltd. v. Tanner,* 407 U.S. 551, 569, 92 S.Ct. 2219, 2228, 33 L.Ed.2d 131 (1972).[1] Therefore, respondents' activity

---

1. Respondents base part of their argument on an earlier decision, *Amalgamated Food Employees*

*Union Local 590 v. Logan Valley Plaza,* 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), that

in leafleting at the Mall of America against Macy's department store is protected only if the free speech guarantee in article I, section 3, of the state constitution extends a broader protection than the First Amendment of the federal Bill of Rights.

The United States Supreme Court's decision in *Lloyd Corp.* not to extend First Amendment protections to privately-owned shopping centers does not prevent a state from extending the free speech protections of its own constitution more expansively to protect expressive conduct in such locations. *PruneYard Shopping Center v. Robins,* 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980). A number of state courts have done so. *E.g. New Jersey Coalition Against War in the Middle East v. J.M.B. Realty Corp.,* 138 N.J. 326, 650 A.2d 757 (1994); *Robins v. Pruneyard Shopping Center,* 23 Cal.3d 899, 153 Cal.Rptr. 854, 592 P.2d 341 (1979). We conclude, however, that the current state of the law in Minnesota and the weight of authority in other jurisdictions do not support such an extension.

Article I, section 3, of the Minnesota Constitution provides as follows:

> The Liberty of the press shall forever remain inviolate, and all persons may freely speak, write and publish their sentiments on all subjects being responsible for the abuse of such rights.

As the trial court noted, this provision is worded differently than the federal Bill of Rights, which provides that "Congress shall make no law * * * abridging the freedom of speech or the press * * * *." U.S. Const. amend. I. It is axiomatic that the Minnesota Constitution may be construed so as to offer greater protection for individual rights than the U.S. Supreme Court has afforded under the federal constitution. *E.g. State v. Fuller,* 374 N.W.2d 722, 726 (Minn.1985). But it is a significant undertaking for a state court to hold that the state constitution affords broader protections than the federal constitution, and it is not sufficient, to reject a U.S. Supreme Court opinion, that one prefers the opposite result. *Women of State of Minn. by Doe v. Gomez,* 542 N.W.2d 17, 30 (Minn. 1995).

The free speech provision in article I, section 3, of our state constitution expresses the right of free speech in positive terms, extending a freedom of speech to "all persons," while the First Amendment expresses the same guarantee in negative terms, as a restriction on the power of Congress to make laws. But, our state constitution's first amendment language is not unique. There are 33 states with virtually identical free speech provisions, stated in positive terms contrasting with the negative phrasing of the First Amendment. *Cf.* Note, *Private Abridgement of Speech and the State Constitutions,* 90 Yale L.J. 165, 180 n. 79 (1980) (counting 43 states with similarly-worded state constitutional free speech clauses).

Our supreme court has held that the free speech provision of the state constitution does not extend any broader protection to speech than is provided in the federal Bill of Rights. *See, e.g., State v. Davidson,* 481 N.W.2d 51, 57 (Minn.1992) (citing *State v. Century Camera, Inc.,* 309 N.W.2d 735, 738 n. 6 (Minn.1981)). This court is not only bound by those decisions, we also find them particularly persuasive in this case.

The trial court's order discusses extensively the history of the state constitution and quotes from the debate over the free speech clause. But none of the debate excerpts quoted reveals the framers' reason for departing from the language of the First Amendment of the U.S. Constitution. The focus of the state constitutional debates is on the problem of libel, confirming Justice Holmes's observation that such state constitutional free speech provisions were primarily concerned with preventing prior restraint on publication, while preserving subsequent actions for libel. *Patterson v. Colorado,* 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879 (1907). Moreover, a logical explanation for our state constitution's free speech clause, given the number of state constitutions with

had applied First Amendment protections to a privately-owned shopping center. But *Lloyd Corp.* quoted with approval from the dissents in *Logan Valley,* 407 U.S. at 562–67, 92 S.Ct. at 2226–28, and the Court later explicitly stated that *Logan Valley* has been overruled. *Hudgens v. NLRB,* 424 U.S. 507, 518, 96 S.Ct. 1029, 1035–36, 47 L.Ed.2d 196 (1976).

similar provisions, is that the language was borrowed from other state constitutions. *See State v. Pett,* 253 Minn. 429, 432, 92 N.W.2d 205, 207 (1958) (when state constitution was drafted, provisions of constitutions from states admitted earlier were available and presumably "carefully studied and compared").

Our supreme court has not addressed whether the state constitution protects expressive conduct in privately-owned shopping centers. This court, however, has rejected an argument that it should extend the protections of article I, section 3, to expressive conduct on private property. *State v. Scholberg,* 412 N.W.2d 339, 344 (Minn.App.1987), *review denied* (Minn. Nov. 13, 1987). Although *Scholberg* involved a demonstration on a sidewalk owned by a private hospital rather than expressive conduct in a shopping center, this court posed the issue in broad terms:

> This is a case of conflicting rights—between demonstrators' free speech rights and a private-property owner's right to exclude.

*Id.* at 341.

Here, the trial court concluded, based on the evidence received concerning the character of the Mall of America and the level of public funding involved in its construction, that the Mall was "born of a union with government" and is not "private" in any real sense. The court conceded that under *Scholberg,* article I, section 3, does not apply to "purely" private property. The court concluded, however, that article I, section 3, does apply to private property in which there is some undefined degree of public subsidy or investment.

■ Our supreme court, while not specifically addressing the principle of "state action" in the context of article I, section 3, has noted that the First Amendment guarantee of freedom of speech does not "provide protection or redress against abridgement by private individuals or corporations." *Cherne Indus., Inc. v. Grounds & Assocs., Inc.,* 278 N.W.2d 81, 94 (Minn.1979). The supreme court has consistently interpreted the state Bill of Rights to require state action. *See, e.g., Zeman v. City of Minneapolis,* 552 N.W.2d 548, 552 (Minn.1996) (takings clause of state constitution applies only to state action). Public funding by itself does not satisfy the "state action" requirement. *See Brennan v. Minneapolis Soc'y of the Blind, Inc.,* 282 N.W.2d 515, 527–28 (Minn.1979) (more is required for "state action" than public funding).

It is not clear whether the trial court in its order was attempting to distinguish *Brennan* or to discard the "state action" requirement for purposes of article I, section 3.

■ Respondents presented evidence that the total public investment in the Mall of America, for both the Bloomington Port Authority and the City of Bloomington, is about $186 million. The parties stipulated that construction and development of the Mall cost its private investors approximately $700 million, and that the Bloomington Port Authority used tax increment financing to finance improvements to the site. Although the trial court's order at one point indicates the Mall of America is unique in the size of the public funding involved, there are many projects that would have the same percentage (estimated by one of the witnesses as 13%) of public financing, and therefore would be potentially subject to being held to be public property under the trial court's reasoning. Under the ruling of the trial court here, there are many properties that have been developed using tax increment financing, or other means of public subsidy, that would apparently not qualify as "purely" private." We conclude that the public funding involved in the development of the Mall of America does not satisfy the state action requirement under *Brennan.*

Neither can we agree with the trial court's apparent discarding of the state action requirement in the area of free speech. The "state action" requirement is a necessary restriction on the powers of the courts under the separation of powers doctrine. As the Connecticut Supreme Court has stated:

> It is not the role of this court to strike precise balances among the fluctuating interests of competing private groups which then become rigidified in the granite of constitutional adjudication. That function

has traditionally been performed by the legislature, which has far greater competence and flexibility to deal with the myriad complications which may arise from the exercise of constitutional rights by some in diminution of those of others.

*Cologne v. Westfarms Assocs.*, 192 Conn. 48, 469 A.2d 1201, 1210 (1984). In the words of one commentator,

> if courts abandon threshold requirements of state action there will be no principled means to prevent the "constitutionalization" of an unacceptably broad range of private law and private relationships.

John Devlin, *Constructing an Alternative to 'State Action' as a Limit on State Constitutional Rights Guarantees: A Survey, Critique and Proposal*, 21 Rutgers L.J. 819, 825 (1990). As the Wisconsin Supreme Court stated:

> To turn what was a prohibition of governmental acts into positive rights against other private persons is not logical nor historically established. * * * To say that whenever a balancing must be done between free speech and private interests that free speech must prevail is to give vent to one's own choices and to rewrite history and the constitution in personal terms. That is not the right nor privilege of courts or judges.

*Jacobs v. Major*, 139 Wis.2d 492, 407 N.W.2d 832, 840 (1987).

We are aware also of the uncertainties created by the trial court's application of free speech rights to an undetermined class of properties that are privately-owned but publicly-funded, at least in part. If the "state action" requirement is discarded, it is difficult to formulate a principled line between those privately-owned locations in which constitutional free speech guarantees should apply and those where they should not. *See Cologne*, 469 A.2d at 1209 (noting the lack of any legal basis to distinguish large regional shopping centers from other large gathering places, such as sports stadiums, theaters, factories, supermarkets or large office buildings). Moreover, a discarding of the "state

action" requirement in this area has broad implications for other constitutional provisions to which the "state action" requirement has traditionally been applied.[2]

We acknowledge the criticisms of the "state action" doctrine. *See, e.g.,* Kevin Cole, *Federal & State "State Action": The Undercritical Embrace of a Hypercriticized Doctrine,* 24 Georgia L.Rev. 327, 333 (1990). We would even note that the one area in which some state courts have dispensed with the "state action" requirement is precisely the issue involved in this appeal, rights of free speech on private property, particularly in large, privately-owned shopping centers. *See, e.g., New Jersey Coalition,* 650 A.2d at 770–71 (state constitutional free speech guarantee applies to private entities). But this is not the majority view. *See Southcenter Joint Venture v. National Democratic Policy Comm.,* 113 Wash.2d 413, 780 P.2d 1282, 1289 (1989) ("overwhelming majority" of courts have declined to apply free speech provisions to private individuals); Cole, *Federal & State "State Action,"* 24 Georgia L.Rev. at 341 (number of states extending state constitutional free speech rights to private property had dropped, as of 1990, from nine to five); amicus brief, *International Council of Shopping Centers, Inc.,* at 4 (counting 13 states as having rejected state constitutional free speech claims on private shopping mall property). It is not even the majority view among states that, like Minnesota, have a free speech provision making no reference to state action. As the Washington Supreme Court has stated:

> It is a 2–foot leap across a 10–foot ditch, however, to seize upon the absence of a reference to the State as the actor limited by the state free speech provision and conclude therefrom that the framers of our state constitution intended to create a bold new right that conflicts with the fundamental premise on which the entire constitution is based. To do so would not be to "interpret" our constitution, but to deny its very nature.

---

2. There are early Minnesota cases indicating the state constitution was not understood as creating positive rights enforceable against private parties. *See Board of Supervisors v. Heenan,* 2 Minn. 330, 332, 2 Gil. 281, 283 (1858) (constitution only a system of limitations on legislative power).

*Southcenter Joint Venture,* 780 P.2d at 1287–88.

The trial court's order is contrary to the many decisions of our supreme court refusing to interpret the state constitutional free speech guarantee in article I, section 3, more expansively than that in the federal constitution. It is also contrary to this court's opinion in *Scholberg,* holding that article I, section 3, does not apply to private property, and contrary to the greater weight of the authority in other jurisdictions that have addressed the issue of state constitutional guarantees of free speech in privately-owned shopping centers.

 We note that the trial court explicitly declined to determine whether the Mall of America had established reasonable time, place and manner restrictions on expressive conduct, although the court did indicate that "banishment to a peripheral area outside the Mall" was not reasonable. Even if the Mall is considered a "public forum," it may enforce time, place and manner regulations that are

content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983). Although the Mall's policy generally prohibits soliciting and leafletting within the Mall, "[e]ven a complete ban can be narrowly tailored." *State v. Castellano,* 506 N.W.2d 641, 647 (Minn.App.1993). There was testimony, moreover, that respon-

dents' activities would have been permitted on the public sidewalk on the periphery of the Mall. Although no part of this area is immediately adjacent to the Macy's store, and this alternative provides little opportunity for direct contact with pedestrians, the record does not show that this alternative is so distant or has so many disadvantages that it is not an acceptable alternative channel of communication. *Cf. Logan Valley,* 391 U.S. at 321–22, 88 S.Ct. at 1610–11 (alternative space outside shopping center that was 350 to 500 feet from targeted store posed safety problems for picketers, and made distributing handbills very difficult was not acceptable alternative to space inside shopping center). Thus, although we do not decide the question of time, place and manner restrictions, we also do not imply that the record shows the Mall's policy to be unconstitutionally restrictive.

**DECISION**

 The free speech protection of article I, section 3, of the Minnesota Constitution does not apply to respondents' expressive conduct at the privately-owned Mall of America.

**Reversed.**