CHENOWETH, et al., Petitioners, Appellants,

v.

**CITY OF NEW BRIGHTON, Respondent.**

No. C0–02–945.

Court of Appeals of Minnesota.

Jan. 28, 2003.

Eric J. Magnuson, Timothy J. Nolan, Peter Gray, Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, for appellants.

George C. Hoff, Kimberly B. Kozar, Hoff, Barry & Kuderer, P.A., Eden Prairie, for respondent.

Considered and decided by STONEBURNER, Presiding Judge, G. BARRY ANDERSON, Judge, and WRIGHT, Judge.

## O P I N I O N

STONEBURNER, Judge.

Joseph and Vickie Chenoweth, and Creative Growth, Inc., a Minnesota corporation, d/b/a Chenoweth Floral and Greenhouses, appeal the denial of their petition for a writ of mandamus to compel the City of New Brighton to initiate condemnation proceedings to compensate them for damage to their property caused by city-facilitated private development on adjacent property. Because the city's involvement in the development does not constitute state action for purposes of stating a claim for inverse condemnation, we affirm.

## FACTS

Appellants Joseph and Vickie Chenoweth, and Creative Growth, Inc., a Minnesota corporation, d/b/a Chenoweth Floral and Greenhouses (Chenoweths), are the owners of real property located at 563 Old Highway 8, New Brighton, Ramsey County, state of Minnesota (parcel 563). For over 25 years, Chenoweths maintained their residence and have operated a flower business, as a nonconforming use, on parcel 563, which has been zoned "industrial" since 1972. Office and retail space, showrooms, greenhouses and the Chenoweths' residence are located on parcel 563. Construction of a large warehouse on adjacent parcel 577 has significantly damaged Chenoweths' business and otherwise interfered with their use and enjoyment of their property.

The City of New Brighton (the city) was substantially involved in facilitating the development that has damaged Chenoweths' use and enjoyment of parcel 563. In its quest for development of the property surrounding and including parcel 563, the city established a development plan and tax-increment financing districts that include parcels 563 and 577, and entered into a Contract for Private Development (contract) with Industrial Equities Group, Inc., (IEG), for a three-phase development of the property surrounding parcel 563. Development of parcel 577 occurred pursuant to the third phase of development and required extensive assistance from the city to facilitate development. The city acquired the land through condemnation and sold it to IEG on very favorable terms. The city paid for certain site improvements and constructed necessary public improvements without assessing IEG for these costs. The contract between the city and IEG required construction of "an office/warehouse/manufacturing facility * * * containing not less than 40,000 square feet." Pursuant to the contract, IEG had to submit construction plans to the city for approval and the city was required to approve the plans if they conformed to the contract and "all applicable federal, state and local laws, ordinances, rules and regulations."

Chenoweths had numerous communications with representatives of the city and IEG and objected to plans that would interfere with operation of their greenhouses. The city ultimately approved, over Chenoweths' objections, a plan for construction of a 30–foot–high, 200–foot–long warehouse, located approximately 15 feet to the south of Chenoweths' main greenhouse. The loading dock area of the warehouse is approximately 25 feet from Chenoweths' residence. Chenoweths requested that the city take their property as part of the development project, but the city declined despite contemplated future expansion onto parcel 563. The proposed warehouse was constructed and Chenoweths allege that the resulting blockage of sunlight and air circulation, use of artificial lights and other changes to parcel 577 have essentially destroyed their business and substantially interfered with their use and enjoyment of parcel 563. Chenoweths petitioned for a writ of mandamus to compel the city to initiate condemnation proceedings on parcel 563. In an initial hearing to determine whether Chenoweths' petition stated a viable claim for inverse condemnation against the city, the district court construed the city's motion to dismiss as a motion for summary judgment. The district court granted summary judgment to the city and dismissed Chenoweths' petition. The district court determined that the facts, as alleged in the petition, constituted a 'taking,' noting that Chenoweths had "produced considerable evidence to show that the use of their property as a wholesale flower business has been substantially harmed." The district court concluded, however, that as a matter of law, Chenoweths had not established a "taking by the state." Additionally, the district court concluded that, because Chenoweths failed to show they were denied all reasonable economic use of their property, they had not established

a taking sufficient to support their inverse condemnation claim. This appeal followed.

## ISSUES

I. Was the private development of property adjacent to Chenoweths' property so entwined with government action as to constitute state action necessary to a claim of inverse condemnation?

II. Do Chenoweths' allegations of damage to their property constitute damage to a protected property interest?

## ANALYSIS

▮ Whether a taking has occurred is a question of law. *Alevizos v. Metropolitan Airports Comm'n*, 298 Minn. 471, 484, 216 N.W.2d 651, 660–61 (1974). On review, this court need not defer to the district court in reviewing questions of law because review is de novo. *Fitger Brewing Co. v. State*, 416 N.W.2d 200, 205 (Minn.App.1987), *review denied* (Minn. Feb. 23, 1988).

▮ The Minnesota Constitution requires "[p]rivate property shall not be taken, destroyed or damaged for public use, without just compensation therefor first paid or secured." Minn. Const. art. I, § 13. The Takings Clause in the Minnesota Constitution ensures

> that the government cannot force 'some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'

*Zeman v. City of Minneapolis*, 552 N.W.2d 548, 552 (Minn.1996) (citing *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960)). It is undisputed that the takings clause applies only to actions by the government that result in a compensable taking. The parties agree that a threshold issue in this case is whether the involvement of the city

in this development project rises to the level of state action for purposes of the takings clause.

■ Case law establishes, and Chenoweths concede, that creation of the tax-increment financing districts and even more extensive interaction through funding, referrals, and regulation does not convert a private project into state action. *See Brennan v. Minneapolis Soc'y for the Blind, Inc.,* 282 N.W.2d 515 (Minn.1979); *Judd Supply Co. v. Merchants and Manufacturers Ins. Co.,* 448 N.W.2d 895, 899 (Minn.App.1989); *State v. Wicklund,* 589 N.W.2d 793, 802 (Minn.1999) (holding, in a case involving first amendment rights, that neither the presence of public financing alone nor public financing coupled with invitation to public to come onto property converts privately owned property into public property for purposes of state action). But Chenoweths assert that there is sufficient state action to support their claim for inverse condemnation because (1) the city retained sufficient direction and control over the development to make it liable for the resulting damage; (2) "but for" the city's substantial efforts, development of parcel 577 would not have occurred; and (3) the city approved a plan that violated Minn.Stat. § 561.01 (2002), Minnesota's private nuisance statute, despite ability to reject plans that did not conform to all applicable laws.

Chenoweths rely on three cases to support their claim that the city retained sufficient control over the project to make it liable. We conclude that, although the cases support the undisputed proposition that a municipality can be liable for a taking even though the work that causes damage to adjoining property is done on property not owned by the municipality and is performed by a private entity, the cases do not support Chenoweths' assertion that this particular city's involvement in this particular project rises to the level of state action.

*Dickerman v. City of Duluth,* 88 Minn. 288, 92 N.W. 1119 (1903), *Maguire v. Village of Crosby,* 178 Minn. 144, 226 N.W. 398 (1929), and *Foss v. City of Montevideo,* 178 Minn. 430, 227 N.W. 357 (1929) all involve the municipality's liability for damages caused by changes to a street grade. *Dickerman* holds that the 1896 amendment to article 1 § 13 of the state constitution abrogated the prior rule that an action will not lie against a municipality for consequential damages to property abutting a public street caused by change of an established grade. *Dickerman,* 88 Minn. at 293–94, 92 N.W. at 1120–21. The court also rejected the argument that the companies that did the work required by the grade change should be liable for any damages rather than the city.

> This contention is also without merit. The city altered and raised the grade, and the companies built the viaduct, in conformity with the change. They acted for the city, and under its authority. Even if they could be held liable in damages, the primary liability for the injury is upon the city, and it is immaterial to plaintiff what the relations may be between it and the parties doing or directly causing the work to be done.

*Id.* 88 Minn. at 294, 92 N.W. 1119. *Maguire* involved the issue of whether the village could be liable for damages caused by a change of grade where the grade change was attributable to the state, but the village approved the construction plans. In concluding that the village was liable, the court depended on language in the applicable highway act that clearly gave the village control of the plan of construction and grade of streets within the corporate limits of the village. *Maguire,* 178 Minn. at 147–149, 226 N.W. at 399–400. *Foss* follows the holding in Ma-

guire. *Foss* 178 Minn. at 431, 227 N.W. at 358. State action was clearly involved in each case. Whatever persuasiveness the reasoning in these cases may have is diminished by the many later cases holding that a government's financial and regulatory control over development does not transform a private project into state action. Nothing in *Maguire* or *Foss* can be used to support the proposition that a municipality's approval of private development plans that meet all legal requirements transforms a private action into a state action for purposes of an inverse condemnation claim. The supreme court has acknowledged that

> [i]t is conceivable * * * that state action could be found in a project having no public funding at all, and conversely, a project funded entirely by public financing may not sufficiently entangle the "power, property and prestige" of the government to create state action.

*Wicklund,* 589 N.W.2d at 802. In *Judd,* the court examined the issue of whether a development project was a public work for which the city was required to provide a bond. We held that the district court committed a fundamental error in concluding that the project was a traditional public work because of the city's involvement. We noted that:

> Private development is not transformed into "public work" simply because it receives public financial assistance.
> * * * *
> Minnesota Statutes chapter 469, entitled Economic Development, indicates that substantial government involvement is authorized and expected to develop private industrial and/or commercial projects. The City's promotion of, assistance with, involvement in and supervision of the Dickenson project is contemplated and required by these statutes.

> * * * *

> The City is not liable for any damages arising out of this project.

*Judd,* 448 N.W.2d at 897, 898, 899. We think that the reasoning in *Judd* is applicable to the case before us. There is nothing unique or unusual about the city's involvement in this project. We are sympathetic to the plight of Chenoweths. Development can drastically change the character of adjoining property and may even give rise to a private cause of action against the developer. Transformation of a government-promoted private development into state action merely because a municipality retains the right to reject plans that do not conform to a development contract or violate applicable laws, however, is an invitation we are compelled to decline, in light of existing case law.

Chenoweths cite no authority for their assertion that state action rests on a "but for" test. Case law rejecting claims that financial assistance to private development constitutes state action for constitutional protections clearly negates any such assertion.

Finally, Chenoweths assert that because the IEG plan approved by the city violated Minnesota's private nuisance statute, the plan violated "applicable federal, State, and local laws," and should not have been approved under the contract. But we conclude that there was no contract violation because the nuisance statute is not an "applicable" law as contemplated by the contract. The city approved plans that met all of the city's zoning requirements and all of the contract requirements and that did not violate any applicable laws or ordinances. Chenoweths' argument that approval of development plans by a city makes a city potentially liable for a compensable taking is without support in the law.

■ We conclude that the city's provision of tax-increment financing and contracting with IEG for development with financial incentives provided by the city policies did not so entwine the conduct of the private developer with the city as to give rise to state action necessary to support a claim for inverse condemnation.

■ The city also argues that Chenoweths have failed to allege a compensable taking. The parties agree that whether or not the damages suffered by Chenoweths amount to a compensable taking is properly analyzed under the test for a direct taking set out in *Alevizos v. Metropolitan Airports Comm'n*, 298 Minn. 471, 487, 216 N.W.2d 651, 662 (1974).

■ In this two-part test, the owner must be able to show a direct and substantial invasion of his property rights of

> such a magnitude he is deprived of the practical enjoyment of the property and that such invasion results in a definite and measurable diminution of the market value of the property.

*Id.* The parties dispute whether Chenoweths have made such a showing. The district court concluded that Chenoweths have alleged sufficient facts that, if determined to be true, constitute a "taking" under this standard. The district court also concludes, apparently in the alternative, that because Chenoweths have not shown that the property has not been denied all reasonable economic use, they have not established a taking, citing *Orfield v. Housing and Redevelopment Authority*, 305 Minn. 336, 232 N.W.2d 923, 927 (1975). *Orfield* involved the standard used for a regulatory taking, and is not relevant to this case. The parties agree that cases involving a regulatory taking have no application to this case. The district court was correct in applying the *Alevizos* test and erred by applying the test for regulatory taking.

The city, however, argues that Chenoweths have failed to establish that they have been deprived of a recognized property interest, even under the *Alevizos* test, and assert that Chenoweths misinterpret and broaden the holding of *Alevizos* beyond the clear intent of that holding. The city argues that Chenoweths' claim amounts to a claim for blocking sunlight and air circulation, which, in Minnesota, have never been found to be protected property rights. *Haeussler v. Braun*, 314 N.W.2d 4 (Minn.1981).

Because we have concluded that there is no state action to support Chenoweths' petition for a writ to compel the city to condemn their property, we decline to reach the issue of whether or not they have sufficiently stated damage to a protected property right sufficient to support an inverse condemnation claim under the *Alevizos* principles.

■ Finally, Chenoweths argue that equity demands inverse condemnation in this case. Because the facts do not support the assertion that there is sufficient state action to invoke the doctrine of eminent domain, equity cannot compel such an invocation.

## DECISION

Establishment of a development plan and tax-increment financing districts, contracting with a developer for specific improvements on land to be developed, and approving construction plans in accordance with the contract and applicable law, does not constitute state action sufficient to support a petition for mandamus compelling condemnation for damage caused by the development to adjoining property.

**Affirmed.**

G. BARRY ANDERSON, Judge (concurring specially).

I concur in the result reached in this case, largely on the basis of *Brennan v.*

*Minneapolis Soc'y for the Blind, Inc.*, 282 N.W.2d 515, 524–25 (Minn.1979) and *State v. Wicklund*, 576 N.W.2d 753, 757 (Minn. App.1998), *aff'd*, 589 N.W.2d 793 (Minn. 1999). In particular, despite the mighty labor on the part of appellants' counsel, I am not persuaded that the city here exercised the type, duration, and level of control over the development of the adjacent parcel so as to *require* the extraordinary remedy of inverse condemnation. Perhaps, as a matter of fundamental property rights, appellants' position should be the law; but at the end of the day, neither Minnesota statutes, nor decisions of the Minnesota Supreme Court, given the fairly routine development agreement at issue here, permits the use of the doctrine of inverse condemnation. *See Martinco v. Hastings*, 265 Minn. 490, 497, 122 N.W.2d 631, 638 (1963) (stating "[i]f there is to be a change in the statute, it must come from the legislature") (citations omitted); *see Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn.App.1987) (asserting "the task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court"), *review denied* (Minn. Dec. 18, 1987); *cf. State ex rel. Coduti v. Hauser*, 219 Minn. 297, 303, 17 N.W.2d 504, 507–08 (1945) (declaring the legislature is free to "ignore logic and perpetrate injustice as long as it does not" violate constitution and that, absent ambiguity in the relevant statute, any remedy must be by amendment of the statute and not by construction) (quotation omitted).

But, of course, there is a difference between what the city is *required* to do and that which it is *permitted* to do. Appellants allege, and the city does not dispute, that they have suffered significant economic losses as a result of city-facilitated development on the adjacent parcel.

Given the unique business operated by appellants, it would not be unreasonable for the city to reconsider its position relative to eminent domain proceedings involving appellants' parcel, particularly in light of the allegation that future city-facilitated development of appellants' parcel may occur. But I agree, based on the present state of eminent domain law in Minnesota, that it is beyond the authority of this court to require the city to commence such proceedings.